# APRIL, 1925.

### BOB BATES v. THE STATE.

No. 8699. Delivered April 29, 1925.

Rehearing denied State Oct. 7, 1925.

**1.—Murder—Charge of Court—Limiting Self Defense.—Error.**

Where on a trial for murder, the court in his charge to the jury, limits the right of the defendant to the condition of the mind of the deceased, as produced by the acts of the defendant, at the time of the shooting such charge is erroneous. Self defense is to be predicated on the actual condition of the mind of the accused, viewing all of the surroundings as they reasonably appeared to him and not as they appeared to the deceased.

**2.—Same—Continued.**

Thus, if the conduct of the deceased was of a nature to and did create in the mind of the appellant a reasonable apprehension of death, as viewed from his standpoint at the time, his culpability would be determined by his estimate of the danger to himself, in the light of *his* knowledge, and could not be modified by the undisclosed, and unknown motives of the deceased.

3.—Same—Charge of Court—Manslaughter—Issue Raised—Should be Submitted.

Where, on a trial for murder, the law of imperfect self-defense is charged, and the evidence is conflicting as to whether or not the deceased, an officer, fired first, without apprising defendant that he was seeking to arrest him, it was error to fail to charge on manslaughter authorizing the mitigation of the offense to manslaughter, under the law of imperfect self defense. Following Reed v. State, 11 Tex. Crim. App. 518, Carlile v. State, 96 Tex. Crim. Rep., 41 and cases there cited.

4.—Same—Continued.

"Often the wrongful act is one which is done without any intent to kill, but which in its nature is calculated to and does bring on an attack in which the assailant is killed by the original wrong-doer to protect his own life, in which case his right of self-defense is impaired but not necessarily destroyed. Following Peter v. State, 23 Tex. Crim. App. 687 and other cases cited.

ON REHEARING.

5.— Where the accused may be actually resisting, or preparing to resist a lawful arrest, if the officer first begins firing on him, the jury should be permitted to say, under appropriate instructions, whether or not the attack so made was adequate cause, that would reduce the offense to manslaughter, even though the unlawful act of the accused which occasioned the attempt to arrest him, destroyed his perfect right of self-defense. See Branch's Ann. P. C., Sec. 2008 on the issue of manslaughter in a case of imperfect self-defense.

Appeal from the District Court of Val Verde County. Trial below before the Hon. Joseph Jones, Judge.

Appeal from a conviction of murder; penalty five years in the state penitentiary.

The opinion states the case.

*Walter F. Jones, Simmons & Blanton,* for appellant.

*Thurmond & Belcher, Julian La Crosse,* district Attorney, *Tom Garrard,* State's Attorney and *Grover C. Morris,* Assistant Attorney, for the State.

MORROW, JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of five years.

Without reciting it, the evidence supports the conclusion that the appellant, Constancia and Mrs. Carruthers had formed a conspiracy to smuggle and transport intoxicating liquors from Mexico to Texas; that appellant and Constancia brought a quantity of such liquors from Mexico to Texas and were, on the night of the tragedy, in the act of putting the liquors in the car of Mrs. Carruthers. According to her testimony in behalf of the State, as the transfer was about to take place, some one stepped upon the left-hand side of the car, about eight feet from the rear end. When the man approached, the witness saw the appellant pull his pistol. It seemed there were two shots fired about the same time. Appellant, after firing the shot, went around the front of the car, and about that time Constancia fired.

Constancia and the appellant then disappeared. The witness was arrested that night and made a written statement while in jail.

Irene Carruthers testified that her mother objected to having the stuff in the car and about that time a man walked to a point about twelve feet distant from the rear of the car. Two blazes of fire were seen and some shots heard. The first blaze appeared to have come from the hand of the appellant who was pointing towards the rear of the car. She did not see anything in the hands of the man who came up from the rear of the car.

The witness Watkins saw none of the parties at the time of the shooting, but saw the flashes from the guns. He said:

"I heard six shots. The first two shots were very close together and the second shot was followed at a short interval by three more shots at equal intervals, and before the last shot there was some little hesitation."

The witness had come to the scene of the homicide in company with the deceased and two others. They had stopped their car because of tire trouble.

The deceased received a gunshot wound about two inches above the left nipple. He was an Inspector of Customs, stationed at the International Bridge. His duties were to examine merchandise offered for entry into the United States, to examine vehicles that passed into and out of the United States, to prevent smuggling, to examine exports and manifests and to protect the revenues of the United States and to search vehicles for contraband coming into this country from Mexico.

It seems that Mrs. Carruthers, soon after the occurrence, at first denied the presence of the appellant but later said that when she saw a man coming she stated: "Look out, there comes somebody," and that after the shooting, she also said: "I told you so."

According to the testimony of the appellant, he and Constancia arrived at the place where they had agreed to deliver the liquor, Mrs. Carruthers came up in an automobile and stopped. She said she thought she heard somebody out in the brush on the left-hand side of car. They were quiet for a few moments after which they loaded the liquor. About that time she said: "There he comes now." Appellant turned around and saw a man coming. He appeared to have a gun in his hand. The man came very close and fired. Appellant turned around, drew his gun and fired quickly after the first shot was fired. The first shot fired did not stop the man, and the appellant fled, passing Constancia on his way. Upon looking back he saw Constancia fire in the direction of the deceased. The first shot fired by the deceased took effect in the breast of the appellant. The second shot fired by him struck the appellant in his left hand. Appellant said that he did not know that he had killed any one. The pistol of the deceased had been fired four times.

The jury were instructed upon the law of murder and principal offenders, also the substance of the State statutes prohibiting the

transportation and possession of intoxicating liquor for the purpose of sale, also the United States statutes forbidding the unlawful transportation, also upon the right of an officer to arrest, without warrant, one who commits a felony in his presence and that the United States custom officers and coast guards were authorized to arrest, without warrant, persons violating the custom laws, also that the arresting officer had no right to kill the offender to prevent his escape.

The court also instructed upon accomplice testimony with reference to Mrs. Bess Carruthers and charged on the law of self-defense. In paragraphs 15 and 15½ the right of self-defense was qualified.

In the 15th paragraph of the charge, the court in substance told the jury, in connection with the law of self-defense, *that if the approach of the deceased was for the purpose of arresting the appellant and that before the deceased approached and had the opportunity to notify the appellant of his official capacity and purpose, the appellant presented his pistol towards the deceased thereby creating in the mind of the deceased a reasonable fear of suffering serious bodily injury or the loss of life and that upon such apprehension the deceased fired, then the appellant could not be justified in killing the deceased upon the ground of necessary self-defense.*

In the succeding paragraph of the charge, the jury were also told in the same connection that it was the duty of the deceased to notify the accused of his purpose in arresting him and that he should refrain from using more force than was necessary to effect his object. The charge concluded with these words:

"*** and if deceased failed to so notify the defendant of such purpose, or in attempting to make such arrest used more force than you believe from the evidence was reasonably necessary to effect the same, then and in that event the defendant's right of self-defense would not be impaired *unless you further believe from the evidence beyond a reasonable doubt that the defendant did not give the deceased time or opportunity to declare his purpose.*"

The effect of paragraphs 15 and 15½ of the charge is to encumber the law of self-defense as applied to the accused with the undisclosed intentions and beliefs of the deceased. Under the charge, the jury, in passing on the issue of self-defense, must determine; first, whether the deceased intended to arrest the appellant; second, whether the deceased had opportunity to give notice of his intentions; and third, whether the conduct of the appellant produced in the mind of the deceased an apprehension of death or serious bodily injury. If these queries were answered in the affirmative, then appellant was without the right of self-defense even though the deceased fired first and wounded the accused. If the prosecution had been against the deceased for wounding the appellant, the questions mentioned would have been appropriate, because then the actions of the deceased would have been weighed in the light of the situation as he viewed it at the time. The appellant being on trial, the law would measure his acts

by the same standard. Thus, if the conduct of the deceased was of a nature to and did create in the mind of the appellant a reasonable apprehension of death, as viewed from his standpoint at the time, his culpability would be determined by his estimate of the danger in the light of his knowledge, and could not be modified by the undisclosed and unknown motives of the deceased.

Touching the phase of the paragraphs of the charge in question which speaks of the want of opportunity on the part of the deceased to reveal his purpose and identity, the evidence seems to raise no issue. As we understand the record, the presence of the appellant and his companions was discovered by the deceased when the car in which he was riding stopped some 100 yards or more away from the place where he was shot. At the time the firing began, he was first discovered eight or twelve feet from the car of the appellant. He uttered no word but approached with a pistol ready and began firing. There is a conflict as to whether he or the appellant fired first, but no dispute of the fact that the first two reports were nearly simultaneous, the appellant was twice wounded, and the pistol of deceased discharged four times.

If the jury believed, as they might have done under the evidence, that the deceased, with a drawn pistol, came suddenly out of the darkness and approached the appellant under circumstances which reasonably calculated to and did impress the appellant that he was about to be attacked, and the appellant through fear fired the first shot, it would seem that whether appellant's mind was incapable of cool reflection and whether there was adequate cause to produce that condition was a question for the decision of the jury. If this was doubtful, the submission of the issue of manslaughter was called for. McLaughlin v. State, 10 Texas Crim. App., 340; Arwine v. State, 49 Texas Crim. Rep., 5; Pickens v. State, 86 Texas Crim. Rep. 657. Certainly, in view of the charges restricting the right of self-defense, a charge authorizing the mitigation of the offense to manslaughter under the law of imperfect self-defense should have been embraced in the court's charge. In other words, the jury might have believed that the appellant, being a law breaker, and the deceased having been killed while in the exercise of his authority to arrest the appellant, he was culpable by reason of having brought himself into a position which invited an arrest and that he ought not to be acquitted even though the deceased fired first. The situation under which the appellant found himself appears to have been that described in many of the reports of this State, and notably in Reed v. State, 11 Texas Crim. App. 518, in these words:

"Whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his own safety that he should take life or do serious bodily harm, then indeed the law wisely imputes to him his own wrong and its consequences to the extent that

they may and should be considered in determining the grade of offense which but for such acts would never have been occasioned.''

In\discussing this subject, we had occasion to say in the recent case of Carlile v. State, 96 Texas Crim. Rep. 41:

''Often the wrongful act is one which is done without any intent to kill but which in its nature is calculated to and does bring on an attack in which the assailant is killed by the original wrong-doer to protect his own life, in which case his right of self-defense is impaired but not necessarily destroyed. Reed's case, supra, is an example. Other cases are found in Branch's Crim. Law, sec. 463. Among them are Peter v. State, 23 Texas Crim. App. 687; Carter v. State, 30 Texas Crim. App. 551; Polk v. State, 30 Texas Crim. Rep. 657; Franklin v. State, 34 Texas Crim. App. 287, Arto v. State, 19 Texas Crim. App. 136; King v. State, 13 Texas Crim. App. 284.''

Without a detailed enumeration of them, the record reveals that by numerous exceptions and requested charges presented in a timely manner, the accuracy of the court's charge in the particulars discussed and the failure to submit the issue of manslaughter, was raised in the trial court and is properly before this court for review. On another trial, we think the jury should be instructed on that issue, and if the right of self-defense is limited by the court, the law of imperfect self-defense should be included in the charge.

In the light of the record, we feel constrained, because of the errors pointed out, to order a reversal of the judgment, which is accordingly done.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon mature reflection we adhere to our conclusion that the learned trial judge erred in not submitting the issue of manslaughter predicated on the propositions of imperfect self-defense as well as possible fear which might have caused the accused to fire without sufficient reason under the circumstances indicated in his testimony. Even though appellant in drawing his pistol, as admitted by him, intended to use it in resisting arrest, and he thereby forfeited his perfect right of self-defense against an attack by deceased brought on by appellant's act in drawing such pistol,—still if appellant shot to save his life from such attack after the officer had first fired, it might appear to the jury that the attack was adequate cause and that same created in appellant's mind such passion, etc. as rendered it incapable of cool reflection, and that under the immediate influence of such passion, etc., he fired and killed deceased, he might be found guilty only of manslaughter. See authorities cited in Mr. Branch's Annotated P. C., Sec. 2008, relating to the submission of the issue of manslaughter in a case of imperfect self-defense.

In what we said in criticism of paragraphs 15 and 15½ of the court's main charge, we intended to go no further than to say that appellant's rights should not have been made dependent in the charge on whether the jury believed that he did not give deceased time to declare his purpose or notify appellant of his official capacity and purpose to arrest him. Appellant was engaged in the perpetration of a felony and was subject to arrest by any officer or private citizen who may have seen him so engaged. He admitted that the transaction occurred about 10:30 at night and that they were loading illicit liquor into a car in the dark, and that one of his companions announced that she believed there was some one near, and presently said "There he comes now," and that at this juncture he, appellant, whirled, drawing his pistol as he turned around. He further asserted that thereupon deceased fired. Other witnesses said that appellant fired first. The law applicable to all the facts in testimony must be charged, and the jury thereunder are charged with the duty of deciding which testimony they will accept. If the jury believed that appellant drew his pistol to aid in resisting arrest, or to prevent lawful interference with his illicit enterprise, they would conclude that his act would be illegal and he would be without perfect right of self-defense. If they believed that he drew his pistol with intent only to defend himself against an attack from some unknown person which, from his standpoint, reasonably threatened life or serious bodily injury, he might claim self-defense.

We know no rule requiring one who approaches a place where he reasonably supposes a felony is being committed, to announce prior to his arrival at the place that he is an officer, or that he intends to attempt to effect the arrest of the parties. The law seems to contemplate that at the time of an arrest, in ordinary cases, an officer should disclose his official capacity, or else at his peril, but we see no application here. If the officer or any citizen purposing the arrest of parties engaged in a felony, should approach with a weapon drawn in the dark to where one was engaged in a felonious enterprise, the rights of the accused would seem to depend on his own purpose and the case as it reasonably appeared to him, and care should be taken not to have the jury drawn aside into a trial of the dead man's purposes and actions. The motion for rehearing is overruled.

*Overruled.*