Donald Whitt **BENNETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 823–84.

Court of Criminal Appeals of Texas, En Banc.

June 4, 1986.

Michael P. Gibson, Dallas, for appellant.

Dan Meehan, Dist. Atty., Bonham, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted by jury of the offense of murder and his punishment assessed at ten years confinement in the Texas Department of Corrections. His conviction was overturned, however, by the court of appeals in *Bennett v. State*, 673 S.W.2d 396 (Tex.App.—Texarkana 1984). The court of appeals reversed because of a jury charge which applied the law of defense of a third person to the actions of the deceased. Finding that as to *appellant* the law of defense of a third person was not raised by the evidence, the court of appeals held that to give such a charge applicable to the *deceased* "was misleading to the jury and improperly limited [appellant's] right of self-defense." *Id.*, at 397. We granted the State's petition for discretionary review to examine this holding. Tex.Cr.App. Rule 302(c)(3).

Appellant is a heavy equipment operator who lives with his wife just outside of Bonham. They have one daughter, Debbie, an eighteen year old who, prior to the instant offense, had recently moved out of her parents' house and into an apartment. At approximately this time Debbie began dating Mark Rattan, a 22 year old leader of a country and western band. Sometime during the evening of Wednesday, November 10, 1982 appellant drove past his

daughter's apartment and noticed that Mark's truck was parked outside. Returning home, appellant commented to his wife that he feared Mark might spend the night with Debbie.

Early the next morning appellant drove by the apartment again on his way to work and discovered the truck still there. Appellant rang the doorbell, was admitted by his daughter and upon finding Mark, assaulted him and then ordered him to leave.

Appellant's wife and parents became emotionally distraught at the news of Debbie's apparent incontinence. Appellant described himself as "feeling desperate." Finding himself unable to sleep on Friday night, he left the house carrying a .357 pistol in a shoulder holster.

At 12:30 a.m. Saturday morning Mark's parents and their out of town guests, Tom DeRushia and his wife, arrived at the Rattan home after spending the evening listening to Mark's band play at a dance. The band members had been invited to the house for breakfast but had not arrived. Presently appellant appeared at the door asking to speak to Mark. He was told that Mark lived in a trailer house down the road.

As appellant was backing his pickup out of the Rattans' driveway, Mark arrived. Appellant lured Mark into his truck on the pretext that they should talk. The dome light was turned on and appellant mixed himself a drink. After some talk appellant pulled the pistol out and pointed it in Mark's face. Testified appellant: "I wanted to scare that boy so bad that every time he even thought about Deb, he wouldn't."

Aware that an altercation between Mark and appellant had occurred the previous morning, Mark's father and DeRushia armed themselves and approached appellant's truck. DeRushia opened the driver's door and commanded appellant to "get the gun out of the kid's face." Without turning to look at DeRushia, appellant responded: "This is none of your business. This is between me and Mark." At this, DeRushia repeated his command, then reached in and grabbed appellant's shoulder, turning him around. Appellant testified that, seeing

DeRushia's gun in the dome light, he thought, "It's all over. That guy is fixing to kill me." Appellant shot DeRushia in the head, killing him.

Appellant and the State agree that at the conclusion of the evidence the trial court gave a proper jury instruction on the law of selfdefense. See V.T.C.A. Penal Code, §§ 9.31, 9.32. However, the trial court next proceeded to give, over appellant's objection, the following instruction:

"5.

A person is justified in using deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under the preceding sections of this charge dealing with the law of self-defense in using deadly force to protect himself against unlawful deadly force which he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor further reasonably believes that his intervention is immediately necessary to protect the third person.

However, under the law of defense of another, unlike under the law of self defense [sic], the actor is under no duty to retreat even though a reasonable person in the actor's situation would have retreated.

All persons are presumed to know the law.

If you believe from the evidence beyond a reasonable doubt that at the time and place in question Frederick Thomas DeRushia reasonably believed that the defendant, Donald Whitt Bennett, was using or attempting to use unlawful deadly force against Mark Rattan and that said Frederick Thomas DeRushia reasonably believed that the use of deadly force when and to the degree he used the same was immediately necessary to protect Mark Rattan and you further believe from the evidence beyond a reasonable doubt that the defendant, Donald Whitt Bennett, as viewed from his standpoint alone, did not reasonably believe that Frederick Thomas DeRushia was us-

ing or attempting to use unlawful deadly force against him, you will find against the defendant on his plea of self-defense. But if you do not so believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will determine the defendant's right of self defense [sic] in accordance with the instructions of this charge under No. 4 above dealing with the right of self-defense and give no further consideration to the instructions under No. 5."

Thus the trial court instructed, in essence, that if the jury believed that DeRushia was justified in using deadly force against appellant in defense of Rattan, and that appellant *himself* reasonably believed that DeRushia was so justified, it should find against appellant in his claim of self-defense.

Observed the court of appeals:

"Tex.Penal Code Ann. § 9.33 (Vernon 1974) [2] provides for a person's limited right to use deadly force against another to protect a third person. The statute, however, is only applicable where the *defendant* in a criminal prosecution seeks to excuse or justify his conduct on the basis that he was protecting a third person. *See* 1 Branch, Texas Annotated Penal Statutes § 9.33 (3rd ed. 1974), and § 1.07(a)(2) (Supp.1983). [emphasis in original.] [1]

> [2] A person is justified in using force or deadly force against another to protect a third person if:
>
> (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 of this code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and
>
> (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person."

Finding the evidence did not raise the issue of whether *appellant* acted in defense of a

**1.** V.T.C.A. Penal Code, § 1.07(a)(2) reads:

> " 'Suspect' means a person whose criminal responsibility is in issue in a criminal action. Whenever the term 'actor' is used in this code, it means 'suspect.' "

third person, the court of appeals concluded that instruction number 5 "was misleading to the jury and improperly limited [appellant's] right of self-defense by hinging it upon what DeRushia believed and the reasonableness of his conduct rather than that of [appellant]. See *Tave v. State*, 620 S.W.2d 604 (Tex.Cr.App.1981)."

The State now argues that "the third person charge in this case was a logical extension of the 'provoking the difficulty' limitation on self-defense under the facts of the case, [Penal Code, § 9.31(b)(4) ], as well as providing clarification of the law for the jury's determination of whether or not Tom DeRushia had any legal right to intervene with deadly force on behalf of Mark Rattan."

▉ Initially it should be noted that strictly speaking the evidence does not raise provoking the difficulty. In *Semaire v. State*, 612 S.W.2d 528, 531 (Tex.Cr.App. 1980) it was observed:

> "... 'One who provokes a difficulty, *intending then to injure his opponent when the latter responds to the provocation,* is not justified in using force against his opponent when the latter responds. This is the common law, long recognized in Texas, and it is codified in Subsection (b)(4)....' State Bar of Texas, *Texas Penal Code: A Proposed Revision* 89 (Final Draft 1970) (identical to S. Searcy & R. Patterson, 'Practice Commentary,' 1 *Vernon's Texas Codes Annotated: Penal Code* 266 (1974)) (emphasis supplied)."

See also *Dyson v. State*, 672 S.W.2d 460 (Tex.Cr.App.1984). Further, the elements of provoking the difficulty, *viz*: intent to provoke and act or words or both, calculated to provoke, and that did provoke, are still required under the 1974 Penal Code. *Williamson v. State*, 672 S.W.2d 484, at 486, n. 1 (Tex.Cr.App.1984).[2] In the instant

> (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)
>
> **2.** "... An accused may seek a party with the intent to provoke a difficulty, but he does not forfeit his right of self-defense unless after he has found his adversary he then by words or

case there is no evidence that appellant held the pistol to the face of Rattan with the specific intent to goad DeRushia into attacking him, so that he could then kill or injure DeRushia. Indeed, for all the evidence shows, appellant did not know nor had ever laid eyes on DeRushia prior to the moment he killed him.[3] Hence we reject the State's contention that the evidence calls for, and the court's charge effectuated, a logical extension of the doctrine of provoking the difficulty.

Nevertheless, for reasons about to be developed, we conclude that the trial court's charge was proper.

■ The court of appeals reasoned that because the accused is the only "person whose criminal responsibility is in issue in a criminal action," he is the only possible "actor" in the cause. See n. 1, *ante*. Thus, Penal Code, § 9.33 ("... under the circumstances as the *actor* reasonably believes them to be ... and the *actor* reasonably believes that his intervention is immediately necessary ...") only applies where the evidence raises the issue of whether the *accused* used force or deadly force in defense of a third person. To have charged the jury in this cause on the law of defense of a third person as it applies to DeRushia's conduct was therefore not authorized under the statute. We disagree.

It is true that DeRushia's criminal responsibility was not "in issue" in the sense that he stood to be convicted in this cause.[4] Nevertheless, in claiming self-defense appellant necessarily asserts that the deadly force used against him was unjustified, and hence, unlawful. Penal Code, § 9.32(3)(A). Where the evidence raises some question whether the deceased's conduct was justified, as it did in this cause, the deceased becomes "a person whose criminal responsibility is in issue" in the case. Accordingly, in charging on the law of defense of a third party vis-a-vis DeRushia, the trial court provided the jury with a framework for determining the lawfulness *vel non* of his use or attempted use of deadly force against appellant. Should the jury find that appellant was using or attempting to use deadly force against Rattan such that DeRushia reasonably believed deadly force was immediately necessary to protect Rattan, then the jury could conclude DeRushia's use of deadly force was justified, and hence *not unlawful*.[5] That it would have been error for the trial court to have given an instruction on the law of defense of a third person as it pertained to appellant, since that issue was not raised by the evidence, does not mean the court lacked authority to instruct the jury on the deceased's right to defend a third person, should a full assessment of appellant's

acts, or both, did provoke it. Indeed, he must go further than that even before his right of self-defense can be so limited. He must not only have intended to provoke his adversary to make an attack in order that he might gain the vantage ground of acting apparently on the defensive, but he must do something or say something, either or both, with the intention and purpose of causing his adversary to make the attack, and then the things he does or says must be reasonably calculated to effect that object. In other words, they must be reasonably calculated to make his adversary begin the attack, the very thing he has designed from the first, in order that he may then proceed with his original unlawful purpose towards his adversary with the law apparently on his side."
*Mason v. State*, 88 Tex.Cr.R. 642, 645–646, 228 S.W. 952, 954 (1921).

3. This is not to say that an accused could not be found to have provoked the difficulty with the intent to kill his adversary by words or acts, or

both, directed at a *third party*, so long as they were calculated to provoke and *did* provoke his adversary, just as the accused intended. See *Norwood v. State*, 135 Tex.Cr.R. 406, 120 S.W.2d 806 (1938); *Tave v. State*, supra, at 607 (McCormick, J., dissenting). In the instant case there simply is no indication that in assaulting Rattan appellant harbored any intent to provoke DeRushia.

4. Indeed, both parties agree that the deceased was not present and did not testify at trial!

5. V.T.C.A. Penal Code, § 1.07(a)(36) reads:
   "'Unlawful' means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege."
   Because defense of a third party *would*, if established, amount to a justification for DeRushia's conduct, that conduct would therefore be deemed lawful. This definition was included in the court's charge.

claim of self-defense, as developed by the evidence, warrant it.

Nor do we agree that by focusing the jury's consideration on the reasonable beliefs which might justify DeRushia's conduct the court's instruction improperly limited appellant's right of self-defense. In making this argument to the court of appeals appellant relied primarily on *Kolliner v. State*, 516 S.W.2d 671 (Tex.Cr.App.1974).

The defendant in *Kolliner* testified that in fleeing a barroom altercation during which shots had been fired, he inadvertently stepped into the women's restroom. Finding no egress, he turned to discover a "dark figure" with a gun, bursting through the door. This dark figure, who later proved to be a plainclothes police officer, wounded the defendant. Returning fire, the defendant killed the officer.

There was apparently other evidence that the defendant had fired first. Accordingly, the following limitation was included in the court's charge:

> "Any peace officer may arrest without warrant any person who shall carry on or about his person any pistol.
>
> It is the duty of a peace officer to notify an accused of his purpose in arresting him, and the officer must refrain from using more force than is necessary to effect his object.
>
> Therefore, if you find beyond a reasonable doubt that the *approach of the deceased was for the purpose of arresting the Defendant, and that before the deceased approached and had the opportunity to notify the Defendant of his official capacity and purpose, the Defendant shot at the deceased, thereby creating in the mind of the deceased a reasonable fear of suffering serious bodily injury or loss of life, and that upon such apprehension the deceased fired,* then the Defendant could not be justified in killing the deceased upon the ground of self-defense." [Emphasis in the original.]

*Id.,* at 673.

Then Commissioner Dally found the above instruction to be defective "in at least two ways:"

> "... This charge requires the jury to make findings of the *undisclosed* intentions and apprehensions of the deceased. The jury's judgment must be made only from the viewpoint of the appellant; the *undisclosed* intentions of the deceased cannot lessen the right of self-defense. [Citations omitted.] The question of whether the deceased had a reasonable fear, as provided in the charge, or indeed any *undisclosed* motive of the deceased, is irrelevant to the issue of the appellant's right of self-defense. If the appellant did not know the identity of his assailant, he may have acted in justifiable self-defense even though the deceased was a peace officer. [Citations omitted.]
>
> Further, there should be no requirement that the appellant provide a peace officer with 'the opportunity to notify the defendant of his official capacity and purpose.' The appellant is entitled to a charge stating that he need have only a reasonable belief that he is under unjustifiable attack viewed from his standpoint at the time he acted. The appellant must only react as anyone would under attack, and he owes no greater duty to an *unknown* peace officer than to anyone else. The reasonableness of his belief is not based upon the giving of an opportunity for notice. See *Bates v. State*, 101 Tex. Cr.R. 230, 275 S.W. 1064 (1925) (opinion on motion for rehearing). If the appellant commenced firing before he believed he was in danger of death or serious bodily injury, or if he *knew* the dark figure was an officer who without the use of excessive force was attempting to arrest him, he would be without the right of self-defense; no other limitation to that right need be given."

*Id.,* at 674.

■ It is clear from *Kolliner* that the reasonableness of an accused's belief that *unlawful* deadly force is being exerted against him must be judged from the standpoint of the accused at the instant he

responds to the attack.[6] Knowledge that his attacker was a police officer could not be imputed to Kolliner at that instant. For this reason any motive operating in the mind of the officer arising from the execution of his duty could not be factored into assessment of the reasonableness of Kolliner's belief, such motive being "undisclosed" to him at the instant he acted.

By contrast, the facts of the instant case suggest that appellant *was* in a position to recognize, at the time he acted, that the force being exerted against him, though perhaps deadly, was justifiable, and hence, lawful. Twice before the shooting DeRushia ordered appellant to "get the gun out of the kid's face." DeRushia's purpose was thus readily apparent to appellant. Upon being turned around and facing DeRushia's gun, appellant could reasonably have believed that deadly force, if such it was, was being used justifiably to counter the deadly force he appeared to be exerting against Rattan. In such a case appellant's reciprocal use of deadly force against DeRushia would not be justified, and it would be proper for the jury to reject his claim of self-defense.

■ The jury was instructed that before it could discount appellant's selfdefense claim it must first find beyond a reasonable doubt two things. First the jury had to determine whether DeRushia was justified in using deadly force against appellant in defense of Rattan. In making this assessment the jury necessarily had to evaluate the reasonableness of DeRushia's belief that appellant was using or attempting to use deadly force against Rattan, and that the force he used to repel appellant's attack against Rattan was immediately necessary. Thus it is true that in determining the lawfulness of DeRushia's conduct the jury had to view the altercation from DeRushia's standpoint, rather than appel-

lant's. The jury was also required to determine, however, whether appellant, viewed strictly from *his* standpoint, reasonably believed that DeRushia was acting lawfully (or, as the instruction somewhat awkwardly phrases it, whether appellant "did *not* reasonably believe that ... DeRushia was using or attempting to use *un*lawful deadly force against him"). Since, as the jury was also instructed, "[a]ll persons are presumed to know the law," the jury was entitled to presume that appellant could also have recognized DeRushia's action to have been justifiable, should they find it was.[7] If it is found that appellant in fact *did* reasonably believe DeRushia was justified, he would have no right to self-defense.

The jury was thus told it could reject appellant's claim of self-defense *only* if it believed DeRushia acted lawfully, *and* it found that appellant himself, at the moment he acted, *also* reasonably believed DeRushia acted lawfully. It was not allowed to assess the reasonableness of appellant's belief from any standpoint but his own. We therefore reject the contention that the trial court's instruction improperly limited appellant's right to self-defense. Though perhaps not a model of clarity, the instruction was nonetheless proper.

The judgment of the court of appeals is reversed, and the cause is remanded to that court for disposition of appellant's remaining grounds of error.

TEAGUE and MILLER, JJ., dissent.

---

**6.** It is equally clear that the reasonableness of an accused's belief that unlawful *deadly force* is being exerted against him must be judged from the standpoint of the accused at the time he acted. See *Valentine v. State,* 587 S.W.2d 399 (Tex.Cr.App.1979).

**7.** It was necessary to have the jury assess not only whether appellant reasonably believed De-

Rushia was acting lawfully, but also whether in point of fact DeRushia *was* acting lawfully. It would be manifestly unjust to deprive appellant of his right to self-defense because he reasonably believed, albeit *mistakenly,* that DeRushia acted lawfully when the circumstances, as viewed from DeRushia's perspective, would *not* have justified his (DeRushia's) action.