NO. 07-04-0447-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 17, 2005

______________________________

ARMANDO SANDOVAL, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-406365; HONORABLE CECIL G. PURYEAR, JUDGE

_______________________________

Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

Appellant, Armando Sandoval, Jr., was convicted by a jury of murder and sentenced to incarceration for life in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.00.  On appeal, appellant contends that the evidence was factually insufficient to support the verdict.  We affirm the trial court’s judgment.

On March 16, 2003, appellant and Christina Moreno got into an argument which escalated into a physical altercation.  During the course of this altercation, appellant was stabbed with a knife once in his leg while Moreno was stabbed numerous times resulting in her death.  Other than appellant and Moreno, there were no eyewitnesses to this altercation. 

Appellant was arrested and indicted for the murder of Moreno.  During the trial, appellant testified that he killed Moreno in self-defense.  The jury charge instructed the jury on the law of self-defense.  The jury, nonetheless, found appellant guilty of murder.

Appellant appeals his conviction and sentence.  By this appeal, appellant contends that the evidence was factually insufficient to support his conviction for murder.  Appellant specifically contends that the State failed to produce factually sufficient evidence to persuade the jury, beyond a reasonable doubt, that appellant did not act in self-defense.

Self-defense is a justification that precludes criminal responsibility and, as such, is a defense.  
Tex. Pen. Code Ann.
 §§ 2.03(a), 9.02, 9.31, 9.32 (Vernon 2003)
(footnote: 1); 
Luck v. State
, 588 S.W.2d 371, 375 (Tex.Crim.App. 1979).  A person is justified in using deadly force against another when and to the degree he reasonably believes deadly force is immediately necessary to protect himself against the other’s use or attempted use of deadly force and when a reasonable person in the actor’s situation would not have retreated.  TPC § 9.32(a).  The reasonableness of the use of deadly force is viewed from the standpoint of the actor at the time that he acted.  
Bennett v. State
, 726 S.W.2d 32, 37-38 (Tex.Crim.App. 1986).  Whether a defendant’s belief was reasonable and whether his actions were justified under the circumstances are fact questions for the jury to decide.  
Hayes v. State
, 728 S.W.2d 804, 808 (Tex.Crim.App. 1987).  A jury implicitly rejects a defense by finding the defendant guilty.  
Adelman v. State
, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992);
 
Saxton v. State
, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991).

When a defendant raises a defense, he bears the initial burden of production, which requires the production of some evidence to support the defense.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex.Crim.App. 2003).  Once the defendant produces evidence supporting the defense, the State bears the burden of persuasion to disprove the defense.  
Id
.  This burden of persuasion does not, however, require the State to affirmatively produce evidence refuting the defense, rather, the State disproves the defense by proving its case beyond a reasonable doubt.  
Id
. 

When a defendant appeals challenging the factual sufficiency of his conviction, the reviewing court must ultimately determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding defendant guilty beyond a reasonable doubt.  
See
 
Zuniga v. State
, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004).  There are two ways in which the evidence may be insufficient.  First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt.  
Id
.  Second, considering all of the evidence, both for and against the verdict, the contrary evidence may be so strong that the beyond-a-reasonable-doubt standard could not have been met.  
Id
. at 484-85.  As appellate courts are not allowed to find facts or substitute its judgment for that of the jury, an appellate court’s determination that the evidence is factually insufficient to support the verdict requires reversal of the judgment and remand for a new trial.  
Id
. at 482. 

In a factual sufficiency review, we are required to consider the most important evidence that the appellant claims undermines the jury’s verdict.   
Sims v. State
, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Appellant contends that his trial testimony established that he killed Moreno in self-defense and that this evidence is so strong that the jury could not have convicted him of murder beyond a reasonable doubt.  We disagree.  Appellant testified that Moreno stabbed him in the leg while they were fighting and, after he had been wounded, he took the knife away from Moreno and stabbed her once or twice in the chest and once in the side.  Appellant testified that he and Moreno then went into another room, without the knife, where the fight continued.  Eventually, appellant and Moreno returned to the first room where Moreno again grabbed the knife.
(footnote: 2)  Appellant testified that, because of how he was situated at this time, he could not retreat from Moreno.  Appellant was, however, able to take the knife away from Moreno, but Moreno continued to hit him with her fists.  Appellant testified that he waited for an opportunity to get inside of her arms and, when he was able to do so, he stabbed Moreno in the chest.  Appellant admitted that he stabbed Moreno at least nine times.  At the time that appellant fatally stabbed Moreno, he had possession of the knife and, thus, the jury could have reasonably concluded that appellant’s belief that the use of deadly force was immediately necessary was unreasonable.  
See
 TPC § 9.32;  
Hayes
, 728 S.W.2d at 808.  Consequently, appellant’s testimony provided sufficient evidence to support the jury’s verdict and does not establish that appellant’s use of deadly force was justified such that confidence in the verdict is undermined.  

Having carefully reviewed all of the evidence in the proper light, we conclude that evidence supporting the jury’s verdict and implied rejection of appellant’s defense is factually sufficient to support appellant’s conviction for murder beyond a reasonable doubt.  
See
 
Zuniga
, 144 S.W.3d at 484-85.  We overrule appellant’s issue.

Having found the evidence factually sufficient to support the jury’s verdict, we affirm the judgment of the trial court.

Mackey K. Hancock

        Justice

Do not publish.  

âåÇàãåßÑ Officers also found a baggie with green shamrocks containing 0.35 grams of methamphetamine, which fell out of the front pocket of a pair of black jeans,  located on the floor of the southeast bedroom.  Those jeans were size 34 in the waist and size 32 in the length.  The pant size appellant was wearing at the time of his arrest was size 34 in the waist and size 34 in the length.  Testimony indicated that Baldwin could not have fit into the jeans and revealed the only person in the house at the time of the search who could have properly fit into the black jeans was appellant.

While searching the southeast bedroom, law enforcement officers also discovered numerous plastic baggies scattered on the bedroom floor.  Glass pipes of the type used to inhale narcotics were found on the night stand and on the floor of the southeast bedroom.  A makeup case was found on top of the dresser which contained finger scales, lighters, plastic baggies, and several glass pipes with burnt residue.  One of the plastic baggies found inside the makeup case had the same green shamrocks which were on the baggie containing the methamphetamine that came from the front pocket of the black jeans.  In addition, the officers located a homemade water bong in a kitchen cabinet and a small baggie with white powder residue in the trash.  Officers also found various sizes of baggies in the living room.

Kuykendall testified that he was smoking methamphetamine with appellant and Baldwin at the residence shortly before the police arrived.  He stated that the three of them had been seated in the living room, passing around a glass pipe containing the methamphetamine.  According to Kuykendall, the methamphetamine belonged to either appellant or Baldwin.  Kuykendall further indicated that when the officers actually entered the residence, appellant and Baldwin were in another room for the purpose of reloading the pipe with methamphetamine.  He supposed that appellant was the one loading the pipe because he “controlled the actions that went on in that house.” Given the direction in which appellant and Baldwin had left the living room of the small house, Kuykendall believed they were reloading the glass pipe in either the bedroom or the bathroom.  He said the pipe had been reloaded once or twice already during their use of it.

Some of the law enforcement officers who testified said drug dealers use empty baggies to package and sell drugs.  The testifying officers supported their opinions that appellant was probably dealing in narcotics by referencing the fact the officers found: (1) baggies containing methamphetamine in the bedroom where appellant was located, (2) clean empty baggies often used to package and sell narcotics throughout the bedroom and living room, (3) glass pipes used to inhale narcotics throughout the bedroom, and (4) finger scales used to weigh narcotics for sale in the southeast bedroom.

Appellant called one witness at trial, his mother Gaye Snelson.  She testified appellant had been living with his parents for four months but had been “staying” at Baldwin’s house for about a week before his arrest.
(footnote: 4)  She said he took changes of clothes to Baldwin’s residence.  She also indicated she typically did appellant’s laundry, and he wore a size 34/34 pant and had never worn his pants two inches short.  She admitted she was aware that appellant had used narcotics in the past. 

It was the province of the jury to evaluate the credibility of the police officers and Kuykendall, and their prerogative to accept their accounts of events as true.  
Taylor
, 106 S.W.3d at 832.  Evidence appellant had just been smoking methamphetamine with Kuykendall and Baldwin supports the conclusion he knew the substance was contraband. The logical force of the evidence of his use of methamphetamine just before his arrest; his residence at the premises; his location in the southeast bedroom where the methamphetamine was located; the proximity of the substance within appellant’s “immediate reach”; the testimony he or Baldwin was reloading the pipe prior to the officers’ entry; the testimony, related to reloading the pipe, that he “controlled the actions” in the house; the presence of glass pipes, small baggies, and finger scales in the southeast bedroom; and the contraband found in the black jeans which, of the persons present, could most closely be associated with appellant supports the conclusion he exercised control, management or care over the substance.  
See
 
Brown
, 911 S.W.2d at 747 (accused’s connection with the drugs was more than just fortuitous); 
Taylor
, 106 S.W.3d at 831 (listing possible links).  Appellant’s mother’s testimony contrary to the jury’s verdict primarily addressed the drugs found in the pocket of the black jeans, and in any event was not so strong as to overwhelm the evidence favoring the verdict.
  
Sims
, 99 S.W.3d at 601.  The evidence was both legally and factually sufficient to show appellant possessed the illegal contraband.  
Evans
, 202 S.W.3d 158; 
Poindexter
, 153 S.W.3d at 405; 
Johnson
, 23 S.W.3d at 7.    

Whether appellant had intent to deliver also was a question of fact for the jury to resolve.  
Reed
, 158 S.W.3d at 48.  The jury could infer that intent from the testimony of the officers of the evidence found in the residence and Kuykendall’s testimony regarding the drug use immediately prior to the officers’ entry.  
See also id. 
at 49 (officer’s expert testimony established intent to deliver).

We conclude a rational trier of fact could have found beyond a reasonable doubt that appellant possessed methamphetamine with an intent to deliver.  
Poindexter
, 153 S.W.3d at 405; 
Zuniga
, 144 S.W.3d at 484.  We therefore conclude the evidence is legally and factually sufficient to support the conviction, overrule appellant’s issues and affirm the judgment of the trial court.

James T. Campbell

         Justice

Do not publish. 

FOOTNOTES
1: Further reference to sections of the Penal Code will be by reference to “TPC § __.”

2: Appellant’s trial testimony conflicts with the written statement that he gave the police after the incident.  In his statement, appellant indicated that he picked up the knife and started stabbing Moreno when he and Moreno reentered the kitchen.  The jury was free to accept appellant’s written statement and reject his trial testimony. 
See
 
Cain v. State
, 
958 S.W.2d 404, 408-09 (Tex.Crim.App. 1997).  However, in analyzing appellant’s most important evidence, we will assume that appellant’s trial testimony was accurate.

4: