**Opinion filed January 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00338-CR

_____

### JAMES CHRISTOPHER NORTH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9790-D**

### M E M O R A N D U M   O P I N I O N

The jury found James Christopher North guilty of the murder of Austin Dale David, and it assessed his punishment at confinement for seventy years and a fine of $10,000. The trial court sentenced him accordingly. We affirm.

Appellant contends in two issues on appeal that the trial court (1) incorrectly charged the jury as to the law of self-defense and (2) abused its discretion when it refused to give the jury a "presumption of reasonableness" instruction.[1]

The grand jury indicted Appellant for murder after he shot and killed Austin with a .40 caliber Glock pistol. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person also commits the offense of murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *Id.* § 19.02(b)(2).

Appellant does not challenge the sufficiency of the evidence. However, we provide an outline of the evidence presented at trial to provide context for our analysis of Appellant's claims.

Austin and his girlfriend, Stephanie Molina, were in her Ford Mustang. Austin was driving, and they were headed south on Sayles Boulevard in Abilene. They were on the way to a meeting of Stephanie's college soccer team. Stephanie, who was in the front passenger seat, testified that she was late for her meeting but that Austin was neither driving recklessly nor in excess of the speed limit. Other witnesses, however, testified that Austin was driving in a dangerous and reckless manner and at speeds up to double the speed limit.

As Austin and Stephanie traveled down Sayles, Appellant drove his pickup in the same lane as, and came up behind, Stephanie's Mustang. As Appellant's pickup approached the rear of the Mustang, Austin abruptly applied the brakes. Stephanie testified that Appellant then drove around them and that Austin "was flipping [Appellant] off." After Appellant passed the Mustang, and when he came to the stoplight at Sayles and 14th, he abruptly stopped in front of the Mustang. Austin quickly applied the brakes to avoid hitting Appellant's pickup from behind.

---

[1]*See* TEX. PENAL CODE ANN. §§ 9.31, 9.32 (West 2011).

There were more than a dozen witnesses who saw both Appellant and Austin stop their vehicles at the stoplight. Several eyewitnesses testified that the Mustang did not hit the rear of Appellant's pickup. Other witnesses testified that they heard or assumed the Mustang had collided with Appellant's pickup, but no witnesses testified that they saw a collision. A surveillance video from a Shell gas station at the corner of 14th and Sayles captured these initial events, and the video does not show that the Mustang collided with Appellant's pickup.

After Appellant stopped his pickup, he immediately got out and walked toward Austin and Stephanie, who were sitting in the Mustang behind Appellant's pickup. Several eyewitnesses testified that Appellant threw his arms in the air and was angry, aggressive, and threatening toward Austin and Stephanie. No one testified that Appellant stopped and checked his pickup for damage. Several eyewitnesses thought that there would be a fight and that Appellant would attack Austin; they also said they would have felt threatened by Appellant's actions. Appellant, who was 5'10" tall and weighed approximately 215 pounds, was larger than Austin, who was 5'8" tall and weighed less than 150 pounds. Stephanie testified that she felt very threatened by Appellant as he approached Austin and her.

As Appellant walked toward Stephanie and Austin, he stopped at the front of the Mustang when Austin got out and pointed a nine millimeter, semiautomatic Ruger handgun at Appellant. With the handgun raised, Austin yelled at Appellant to get back in his pickup and leave. Appellant went back to his pickup and got in; Austin got back into the Mustang. Stephanie testified that Austin put his handgun back where it was originally kept in the vehicle. Witnesses differed on whether Austin remained standing next to the Mustang with the handgun pointed at Appellant until Appellant got back in his pickup or whether Austin walked Appellant back to the pickup with the handgun pointed at Appellant. Several

eyewitnesses testified that the encounter was over after Appellant got in his pickup and Austin got in the Mustang.

However, although Appellant returned to his pickup, after a few seconds, he put his pickup in reverse and accelerated backward into the Mustang; Austin and Stephanie were still sitting in the Mustang. The Shell station video also recorded this action. Witnesses testified that Appellant "floored" the accelerator and "slammed" his pickup into the front of the Mustang. Appellant's pickup pushed the Mustang north on Sayles, in the opposite direction of traffic, and caused the Mustang to collide with a van behind it.

As Appellant pushed the Mustang and the van backward on Sayles, the van became dislodged from the Mustang. Appellant continued to push Austin, Stephanie, and the Mustang until Austin turned the steering wheel and the Mustang turned, went up onto the median, and came to a stop facing west. Appellant also backed his pickup onto the median and came to a stop facing southwest. Appellant had pushed Austin, Stephanie, and the Mustang approximately 172 feet from the intersection where he had initially "rammed" into the Mustang.

When Appellant's pickup came to rest, he immediately got out with his Glock .40 caliber semiautomatic handgun drawn. Appellant walked toward the Mustang and shot Austin in the head. Austin died as a result of the gunshot wound.

There were numerous witnesses to the events that occurred after the point in time when Appellant backed into the Mustang and pushed it down Sayles, but their testimony differed as to the exact details of what they recalled. Except as the evidence relates specifically to Appellant's issues on appeal, and in the absence of a sufficiency of the evidence challenge, we do not find it necessary to detail the testimony of each individual witness but, rather, will generally summarize the evidence.

4

Several witnesses testified that, after the vehicles came to a stop in the median, Appellant got out of his pickup first. Others testified that Appellant and Austin got out of their vehicles at approximately the same time. All of the witnesses, except one, testified that, when Appellant shot Austin, Austin had not fully exited the Mustang but still had one leg inside it. One witness testified that Austin was the first to exit a vehicle.

There were witnesses who testified that Austin had his handgun drawn as he was getting out of the Mustang; others said that Austin did not have time to raise the handgun before Appellant shot and killed him. One witness testified that, before Appellant shot Austin, he told Austin to "put the gun down." No other witnesses testified that they heard Appellant say anything until after Appellant shot Austin.

There was a dispute as to the number of gunshots that were fired. Some witnesses said that they definitely heard two shots; some thought that the sound of the second shot was an echo; and others said that they heard only one shot. No one testified that Austin fired his handgun, and although inconclusive, forensic tests indicated that Austin had not fired his handgun.

Stephanie testified that, after Appellant shot Austin, Appellant walked up to Austin's body, smiled, and said, "[N]ext time learn not to pull a gun on someone." Other witnesses testified that Appellant was calm and that his demeanor surprised them. Still other witnesses testified that Appellant appeared to be "in a fog" or "in shock." Additionally, there were witnesses who testified that Appellant put his handgun back in his pickup; lit a cigarette; walked across the street; and said, "You saw him pull that gun, you saw him." "[H]e pulled the gun out first."

Appellant requested that the trial court instruct the jury on the law of self-defense and on the presumption of reasonableness as provided by Sections 9.31 and 9.32 of the Texas Penal Code. Although the trial court did give a self-defense

5

instruction to the jury, Appellant takes the position that the instruction that the trial court gave was erroneous because it focused only upon Austin's viewpoint of the encounter. The trial court did not give a presumption of reasonableness instruction to the jury.

The State urges us to first determine whether there was one continuous confrontation or whether there were two separate confrontations or encounters on that fateful day at Sayles and 14th. It is the State's position that the initial encounter was over at the point in time when both Appellant and Austin got back into their respective vehicles. The second encounter began when Appellant backed his pickup into the Mustang and pushed it backward some 172 feet on Sayles. The State contends that, because there were two distinct and separate events, the question should focus on the second encounter and that the inquiry becomes whether Appellant was justified in using deadly force against Austin at the point in time that he "[rammed] his [pickup] into [Austin's] car." At that point in time during the second encounter, Austin had not used any force, deadly or otherwise, against Appellant. Therefore, the argument goes, the only proper inquiry was whether Austin was justified when he got his pistol and started to get out of the Mustang. And, the State posits, that is the focus of the jury instruction that the trial court actually gave to the jury.

The State's position is, in essence, an argument that, because Austin had not used any force, deadly or otherwise, against Appellant when Appellant attacked Austin with his pickup and commenced the second encounter, Appellant was not entitled to a charge on self-defense in the first place. The State also argues that, if the events constituted but one encounter and Appellant was entitled to a self-defense instruction, then the instruction was simply incomplete but was neither erroneous nor harmful. Thus, we must determine whether Appellant was entitled to a charge on self-defense. And if we determine that Appellant was entitled to a

6

charge on self-defense, then we determine whether the charge given by the trial court was erroneous and, if so, whether the error was harmful and necessitates reversal.

When we review a claim of jury charge error, we engage in a two-step process. First, we determine whether error exists, and then we "determine whether sufficient harm resulted from the error to require reversal." *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Our law provides that the trial court shall "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Our law further provides that a trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007).

Self-defense is a justification for conduct that would otherwise be criminal. *See* PENAL §§ 9.02, 9.31, 9.32. "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001). The record must contain some evidence, when viewed in the light most favorable to the defendant, that will support the claim. *Id.* "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). A defensive issue is "raised by the evidence" if there is sufficient evidence to permit a reasonable jury to find in the defendant's favor on

the issue. *Ferrel*, 55 S.W.3d at 592 (citing *Mathews v. United States,* 485 U.S. 58, 63 (1988)). A defendant need not testify for a defensive issue to be sufficiently raised. *Smith v. State*, 676 S.W.2d 584, 585–87 (Tex. Crim. App. 1984); *Johnson v. State*, 271 S.W.3d 359, 362 (Tex. App.—Beaumont 2008, pet. ref'd). The testimony of any witness, even one called by the State, may raise a defensive issue. *Johnson*, 271 S.W.3d at 362. But "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue." *Ferrel*, 55 S.W.3d at 591.

Under Section 9.32 of the Texas Penal Code, as applied to cases like this one, a defendant is justified in using deadly force (1) if he would be justified in using force under Section 9.31 and (2) when and to the degree that the defendant reasonably believed that the deadly force was immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of, among other things, murder. *See* PENAL § 9.32(a). Under Section 9.31 of the Texas Penal Code, with some exceptions not applicable here, "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See* PENAL § 9.31(a).

We do agree with the State that there were two separate and distinct encounters in this deadly road-rage event. The first ended when Appellant and Austin got back in their respective vehicles at the intersection of Sayles and 14th. The second began when Appellant rammed into the Mustang and pushed it backward on Sayles. However, we cannot agree with the State that Appellant's action when he backed into the Mustang is the deadly conduct with which we are concerned in the self-defense aspect of this case. The focus of our inquiry is upon the point in time when Appellant got out of his pickup, went toward the Mustang,

8

and shot and killed Austin.  Is there evidence to raise the issue that Appellant, at that point in time, reasonably believed that force was immediately necessary to protect him against Austin's use or attempted use of unlawful force?  Further, because this case involves deadly conduct, is there further evidence to raise the issue that Appellant, at that point in time, reasonably believed that deadly force was immediately necessary to protect him against Austin's use or attempted use of unlawful deadly force or to prevent Austin from committing murder?  We conclude that there was no reasonable belief by Appellant that force, much less deadly force, was immediately necessary to protect himself from Austin.

A "reasonable belief" is a belief that is held by an ordinary and prudent person in the same or in similar circumstances as the actor.  *See* TEX. PENAL CODE ANN. § 1.07(42) (West Supp. 2013).  "It is well settled that self-defense is viewed from a reasonable-person standard.  The test assumes that a defendant may act on appearances as viewed from his standpoint, but 'the test also assumes the "ordinary prudent man test of tort law."'"  *Moreno v. State*, No. 11-11-00098-CR, 2012 WL 6582556, at *7 (Tex. App.—Eastland Dec. 13, 2012, no pet.) (mem. op., not designated for publication) (quoting *Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986)); *see also Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) (citing *Jones v. State*, 544 S.W.2d 139 (Tex. Crim. App. 1976)).

While at the stoplight, Appellant returned to his pickup, but did not immediately get his gun and go back to the Mustang; there was no need because Austin had lowered the handgun and had returned to the Mustang.  No one testified that Austin kept the handgun pointed at Appellant's pickup after Appellant got back inside his pickup.  Stephanie testified that, once Austin was back in the Mustang, he returned the handgun to its original location.  Thus, when Appellant was seated in his pickup, there was no threat of any force, much less deadly force, from Austin.  Appellant could have had no reasonable belief that deadly force was

9

immediately necessary at that point in time. Viewing the evidence in a light most favorable to Appellant, he failed to produce some evidence that he had a reasonable belief that deadly force was immediately necessary to respond to Austin at the intersection. Appellant was not entitled to an instruction on self-defense in connection with the first encounter at the intersection of Sayles and 14th because there was no threat of deadly force and because there was no evidence as to Appellant's belief that his use of deadly force was immediately necessary to respond to Austin's asserted use of deadly force.

The same is true of the second encounter. The record contains no evidence of what Appellant did or did not reasonably believe at the time that he shot and killed Austin. As the State comments in its brief, we cannot know from the evidence "what was in Appellant's thoughts."

Appellant cites *Bennett v. State*, 726 S.W.2d 32 (Tex. Crim. App. 1986), and *Kolliner v. State*, 516 S.W.2d 671 (Tex. Crim. App. 1974), as support for his position that he was entitled to a correct charge on self-defense. In each of those cases, however, the defendant testified as to what he reasonably believed. We are well aware that the evidence needed to raise defensive issues or justification issues does not have to come from a defendant personally. But it has to come from somewhere; we are of the opinion that there is no evidence in this record to support a self-defense instruction. For that same reason, we cannot hold that the trial court commented on the evidence when it gave the self-defense instruction that it did. Appellant's first issue on appeal is overruled.

In his second issue on appeal, Appellant argues that he was entitled to a presumption of reasonableness instruction and that the trial court erred when it refused to give one. Section 9.32(b) of the Penal Code provides that a defendant's belief that force is immediately necessary to protect him from the other's use or attempted use of unlawful force is presumed to be reasonable under certain

10

conditions. As we have held, there is no evidence in this record as to what Appellant did and did not believe. Therefore, he is not entitled to an instruction that his belief was reasonable. The trial court did not abuse its discretion when it refused to give an instruction on the presumption. Appellant's second issue on appeal is overruled.

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


January 24, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.