**Clyde EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–81–108–CR.**

Court of Appeals of Texas, Austin.

Oct. 13, 1982.

John Gauntt, Taylor, Taylor, Gauntt & Guess, Temple, for appellant.

Arthur C. Eads, Dist. Atty., James Russell, Administrative Asst., Belton, for appellee.

Before PHILLIPS, C.J., and EARL SMITH and BRADY, JJ.

EARL SMITH, Justice.

Appellant was convicted of the offense of aggravated robbery in trial to a jury, which assessed punishment at eleven years. He predicates his appeal on three grounds of alleged error: (1) that the trial court erred in overruling his motion to suppress testimony concerning the picture lineup in that the lineup was impermissibly suggestive; (2) that the trial court erred in allowing the victim's in-court identification of appellant in that such identification was tainted by the photographic lineup; and (3) that the trial court erred in failing to grant appellant's motion for mistrial after sustaining his objection to a police officer's testimony that appellant had been implicated as a member of a robbery team in that such testimony concerned extraneous robbery offenses.

We turn now to the claimed errors in identification. Both will be dealt with together, as they were treated in appellant's brief, because they are predicated one upon the other.

On January 8, 1981, Jane Culp was robbed at gun point in the parking area of a shopping mall in Killeen. The robber was a light-skinned Negro man. Appellant was identified by Mrs. Culp as the perpetrator from a series of photographs of Negro men shown to her on March 9, 1981; she also positively identified appellant at a pre-trial suppression hearing, and before the jury.

At the conclusion of the pre-trial hearing, the trial court found that each of the photographs in the array was of an individual similar in appearance to appellant, which finding is well supported by the photographs in the record. He overruled appellant's contention that the photographic lineup was impermissibly suggestive and further found that the victim's in court identification of appellant was made independent from the photo spread. Mrs. Culp testified that there was no possibility, even infinitely small, that she might be mistaken in her identification.

■ Appellant's argument that he was the only light-skinned Negro included in the array is contradicted by the court's findings of fact and the photographs included in the record. Further, we find nothing in the record to indicate that the photographic lineup was impermissibly suggestive nor that it in any way influenced the positive in-court identification by the victim. The law is clear that convictions based upon eyewitness identification at trial following a pre-trial photographic identification will only be set aside on that ground if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Unless the trial judge finds as a matter of law that the picture spread was impermissibly suggestive and that there was a likelihood of irreparable misidentification, the in-court identification is properly admitted before the jury. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Taylor v. State,* 474 S.W.2d 207 (Tex.Cr.App.1972); *Boyd v. State,* 472 S.W.2d 125 (Tex.Cr.App.1971). The trial court did not err in overruling appellant's motion to suppress.

■ Appellant's contention that the in-court identification by Mrs. Culp was "tainted" by the photographic lineup must be rejected. It is true that an in-court identification must be purged of any primary taint of earlier identifications. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Martinez v. State,* 437 S.W.2d 842 (Tex.Cr.App.1969). In determining whether the in-court identification is of independent origin, the Supreme Court in *Wade, supra,* suggested guiding criteria for the application of this test: (1) prior opportunity of the witness to observe the criminal act; (2) the existence of any discrepancy between any pre-lineup description and the actual appearance of the accused; (3) any identification prior to the lineup of another person; (4) the identification by picture prior to the lineup; (5) failure to identify the accused on a prior occasion; and (6) lapse of time between the act and the identification. *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972).

We have affirmed the trial court's holding that the photographic lineup was not impermissibly suggestive. Also, it is to be remembered that Mrs. Culp's in-court identification was positive and independent of the photographic array, and therefore not "tainted" by same. At the time of the crime, Mrs. Culp observed the robber at very close range, in broad daylight for two to three minutes. Shortly thereafter she described his appearance in detail to the police, and did not deviate from her description at any stage of the proceedings. Although she could not recall noticing any unusual coloration of appellant's eyes, her identification remained positive and unequivocal.

■ Appellant's contention that the victim's in court identification was "tainted" by the photographic lineup is without merit, and the trial court did not err in allowing her identification of appellant before the jury.

We turn now to appellant's third ground of error in which he contends that the trial court erred in denying his motion for mistrial. During trial, appellant's counsel attempted to develop a conflict between the testimony of the victim, Jane Culp, and that of one of the investigating officers. This concerned whether Jane Culp had been shown a second set of photographs after she saw the set from which her identification of appellant was made. She testified that she had been shown a second set. The investigating officer, on cross examination by appellant, testified that Mrs. Culp had only viewed one photographic array.

After the State rested, its motion to reopen was granted. The investigating officer was recalled and he admitted that he had been in error concerning whether Mrs. Culp had been shown a second array of photographs. He stated that she had been shown a second array in which appellant's photo had not been included, and that the victim did not identify anyone from the second array.

After admitting that he had showed Jane Culp the second array, the officer continued to testify on examination by the prosecutor as follows:

Q. All right. Could you tell us why that was done?

A. Yes, Sir. We had a spread of approximately fourteen or fifteen robberies. We had received information that there may have been a team of individuals doing these robberies and Mr. Evans was implicated as a member of that—

Mr. Gauntt: Your Honor, I'll object to that testimony in this State of—

The Court: Sustained. Ladies and Gentlemen of the jury, disregard the statement.

Mr. Gauntt: Move for a mistrial.

The Court: Denied.

Q. (By Mr. Curtis) The question I'm asking, Officer, is why you showed a second series of photographs.

A. There was another Negro male identified later that had similar appearance.

Q. All right. He was a light-skinned?

A. Yes, Sir.

Q. And because of that and in order to be sure of her identification in this case, you showed her a spread containing the second suspect's picture; is that right?

A. Yes, Sir.

Q. Was he ever actually a suspect in this case?

A. No, Sir.

Q. She did not identify him?

A. No, Sir.

Q. You didn't have information that tended to connect him to this case?

A. No, Sir.

Q. The only person that Mrs. Culp ever identified was the defendant in this case, Clyde Evans?

A. Yes, Sir.

Q. And that was on the 9th of March?

A. Yes, Sir.

It was appellant, through his cross-examination of the victim and the officer, who obtained an admission from the victim that she had been shown the second array of

photographs. Apparently this was done either to give the jury the impression that the officer was not certain as to Culp's identification of appellant or to cast doubt on the victim's credibility. Having introduced that act by the officers, appellant became bound by the provisions of Tex. Code Cr.P.Ann. art. 38.24 (1979), which provides:

When part of an act, declaration or conversation or writing is given in evidence by one party, the whole may be inquired into by the other .... When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence.

■ The purpose of this article is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only a part of an act. *Roman v. State,* 503 S.W.2d 252 (Tex.Cr.App. 1974). Under this provision, rebuttal testimony is admissible, even though it contains evidence of extraneous offenses.

In *Burns v. State,* 556 S.W.2d 270 (Tex. Cr.App.1977), the defendant was convicted for the capital murder of one E.W. McDonald. On appeal, the appellant contended that the court erred in admitting evidence of an extraneous offense concerning the beating of a third person named Barnett, which occurred at the same place and a week prior to the murder of McDonald.

In affirming the conviction, the Court of Criminal Appeals said, at page 282, "There can be no doubt but that this testimony was damaging to appellant," and at page 284, went on to say:

In the instant case, the appellant cross-examined the witness about his observation at the scene a week prior to the murder. An effort was made to impeach the witness by use of the affidavit of the witness on matters stated therein which related to the Barnett beating and robbery which occurred a week earlier. The result of appellant's extensive cross-examination on those matters relating to the extraneous offense undoubtedly left the jury in confusion and possibly under a false impression as to seemingly inconsistent statements made by Harper. We find that as a result of the appellant's cross-examination, *the state was entitled to inquire into the whole on the same subject inquired into.* (Emphasis supplied).

■ So, in this case, where appellant opened the door by inquiring about the second photographic lineup, the State was entitled to explain to the jury why Mrs. Culp had been asked to view it. Without explanation, the jury might have concluded either that the police doubted her identification, or that the victim was not a credible witness.

■ Moreover, even if such testimony was error, we hold that it was cured by the Judge's instruction to disregard it. An error in asking an improper question or in admitting improper testimony may generally be cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Thompson v. State,* 612 S.W.2d 925, 928 (Tex.Cr.App.1981); *Carey v. State,* 537 S.W.2d 757 (Tex.Cr.App.1976); *Bolden v. State,* 504 S.W.2d 418 (Tex.Cr.App.1974); *Walters v. State,* 628 S.W.2d 526 (Tex.App. 1982).

The statement complained of in this case does not appear to have been deliberately sought by the prosecutor in order to inflame the minds of the jury. The Judge's prompt action in sustaining the objection and instructing the jury to disregard the statement was sufficient under these circumstances to cure the error. That the minds of the jury were not inflamed is demonstrated by the eleven year punishment assessed for aggravated robbery.

Appellant's third point of error is overruled.

Finding no reversible error, the judgment is affirmed.