Florencio **SOLANO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–85–00270–CR.

Court of Appeals of Texas, San Antonio.

March 31, 1987.

Rehearing Denied April 23, 1987.

Armando Barrera, Alice, for appellant.

Rolando Ramirez, Dist. Atty., Alice, for appellee.

Before CANTU, REEVES and CHAPA, JJ.

## OPINION

REEVES, Justice.

A jury found Florencio Solano guilty of murder as alleged in count 2 of a three count indictment and assessed his punishment at 20 years' confinement in the Texas Department of Corrections. He contends that he is entitled to another trial because the trial court: (1) permitted the State improperly to bolster the testimony of a witness, Joe Guajardo, with a written statement given by Guajardo to Ramero Castel-lano, the Sheriff of Brooks County, and (2) failed to give the requested instruction on the affirmative defense of duress when the jury considered the third count of the indictment.

Solano was convicted of murdering Phil Marshall during a failed drug deal. On July 9, 1983, Marshall, Oscar Cantu, Jr., Joe Guajardo and his brother Lionel Guajardo, met at Joe Guajardo's house to buy an unspecified amount of marihuana from Thomas Gonzalez. Late that evening, Gonzalez called Joe Guajardo and told him to take his group out to the Santos Villarreal ranch in Duval County for the sale. They met Gonzalez and Jose "Chema" Lopez at the ranch house. From the ranch house, the six men drove to a nearby watermelon field. There they were met by Solano and Ruben Navarro. Marshall, Cantu and the Guajardos then were tied, blindfolded and placed face down in the dirt. Gonzalez then told Navarro and Solano to search Marshall, Cantu and the Guajardos. Solano took $8,000 from Joe Guajardo. Navarro discovered a small caliber weapon on Cantu.

Lopez next had Navarro turn Cantu face up, and Lopez shot Cantu three or four times with Cantu's own gun. Thereafter, Gonzalez shot Marshall. Subsequently, Solano also shot Marshall. To "seal their friendship," Gonzalez, Lopez, Solano and Navarro each put at least one bullet into either Marshall or Cantu or both of them. For reasons not clear in the record, the Guajardos were spared. Navarro and Solano dumped Marshall's and Cantu's bodies off a nearby bridge. They were discovered a few weeks later by a passing motorist.

## THE BOLSTERING CONTENTION

■ Solano first complains that the trial court erroneously allowed the State to bolster Joe Guajardo's testimony by introducing Guajardo's earlier written statement. That statement was given to Brooks County Sheriff Romero Castellano, and basically relates the events previously set out in this opinion.

At trial, Guajardo testified to the murder events. His testimony was consistent with his written statement. After Guajardo testified, the State called Castellano. During cross-examination, the sheriff was asked to identify the written statement given him by Joe Guajardo. Without introducing the statement into evidence, the defense elicited the following:

Q: And what is the date on the copy of that statement?

A: September 15th, 1983.

Q: Could you explain to the court and the jury why it took you so long to conduct a search warrant on the premises of Chema Lopez knowing since September that he was one of the principals involved in the shooting of Oscar Cantu and Phil Marshall?

A: Well, in order to sign an affidavit you have to have probable cause.

Q: Well what other probable cause did you have besides the voluntary statement made the Guajardos?

A: Well, during that time we were verifying their declarations on that written statement or that copy of the written statement you showed me.

Q: You were looking for verification of those statements?

A: Yes, sir.

Q: That means you did not believe them.

A: That means I wanted to make sure they were telling me the truth.

The defense then questioned Sheriff Castellano about an affidavit he executed to obtain a search warrant for the business premises of Lopez and Gonzalez. Within the affidavit, the sheriff stated:

Affiant [Sheriff Castellano] was told by the Guajardo's [sic] that they were present when the above-described persons [Lopez and Gonzalez] shot Oscar Cantu, Jr. and Phil Marshall. The Guajardo's [sic] stated that they had gone to the Santos Villarreal ranch in Duval County, Texas, to purchase marihuana from Jose Maria Lopez and Thomas Gonzalez. They were robbed of approximately $28,000.

The Guajardo's [sic] further related to affiant that Jose Maria Lopez then shot Oscar Cantu, Jr. several times as he lay on the ground. A little later Thomas Gonzalez shot Phil Marshall with a fully automatic weapon.

The sheriff's search warrant affidavit does not mention that Solano also shot Marshall. This affidavit was then introduced in evidence.

The defense's questions emphasized that the sheriff's search warrant affidavit says that the Guajardos told him that Lopez shot Cantu and Gonzalez shot Marshall. When asked by the court why he was going into the sheriff's affidavit, the defense attorney replied "I'm going into the statements that were made by the Guajardos to the sheriff."

Upon redirect, the State established that the written Guajardo statement which the defense previously asked the sheriff to identify was one of the statements to which the sheriff was referring in his affidavit. The court then admitted Joe Guajardo's written statement into evidence over the defense's objection. Solano now argues that the admission of Guajardo's statement constitutes improper bolstering of his previous testimony. The State responds that the defense opened the door to the issue of the content of Joe Guajardo's statement and that article 38.24 of the Texas Code of Criminal Procedure, now Rule 107 of the Texas Rules of Criminal Evidence, allowed the prosecution to introduce it.

Article 38.24 of the Texas Code of Criminal Procedure stated:

When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence.

Interpreting this article, the Court of Criminal Appeals has said:

The purpose of this provision is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act or declaration. The theory behind the rule is that by allowing the jury to hear the rest of the conversation on the same subject the whole picture will be filled out, removing any misleading effect which may have occurred from introduction of only a portion of the conversation. Obviously this purpose is achieved by receipt by the balance of the conversation on the same subject.

*Cerda v. State*, 557 S.W.2d 954, 957 (Tex. Crim.App.1977). The reasoning applies to this case.

On cross-examination, the sheriff testified that the statements about Lopez and Gonzalez shooting Cantu and Marshall were based on statements by the Guajardos. The jury could have been misled as to whether Joe Guajardo's written statement mentioned Solano and therefore whether Joe Guajardo's testimony differed from the statement he gave to the sheriff. To remove any misleading effect, the State introduced Joe Guajardo's written statement. In light of the defense asking the sheriff to identify Joe Guajardo's statement and then asking the sheriff about statements made by the Guajardos to him, and of 38.24, the court did not err in allowing Joe Guajardo's written statement into evidence. *Wintters v. State*, 616 S.W.2d 197, 201–02 (Tex.Crim. App.1981)

Point of error one is overruled.

### FAILURE TO SUBMIT REQUESTED INSTRUCTION

Solano also complains that the trial court erred in not submitting his requested instruction on the affirmative defense of duress. At trial, Solano maintained that he was forced to rob Guajardo and shoot Marshall. He testified that he feared that if he did not take Guajardo's money and shoot Marshall, Gonzalez or Lopez would kill him.

Solano was indicted on two counts of murder and one count of aggravated robbery. The jury charge contained Solano's requested instruction on duress for the murder counts but not the aggravated robbery count. The jury found Solano guilty of murder under the second count of the indictment. Solano now complains the trial court erred in not submitting an instruction on duress on the aggravated robbery count. However, since Solano was not found guilty under that count, the error, if any, was harmless. *Morgan v. State*, 644 S.W.2d 766, 772–73 (Tex.Crim.App.1982).

Point of error two is overruled.

The judgment of the trial court is affirmed.