**Merle JOHNSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. C14–87–537–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 18, 1988.

Discretionary Review Refused
May 25, 1988.

John G. Gilleland, Houston, for appellant.

John B. Holmes, Jr., Cathleen Herasimchuk, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

Merle Johnson appeals a felony conviction for theft of over $750.00 and less than $20,000.00. A jury found appellant guilty and the court assessed punishment at ten years imprisonment, probated, and restitution of $3,000.00. Appellant contends in his first four points of error that the trial court committed error in (1) admitting appellant's tape recorded oral statements into evidence; (2) admitting evidence of extraneous offenses committed by appellant's wife; (3) and (4) denying appellant's motion for a directed verdict at the conclusion of the state's case. In point of error number five appellant contends there is a fatal variance between the allegations in the indictment and the evidence presented at trial concerning ownership of the stolen property. We affirm.

Appellant was employed as an assistant superintendent of Tomball Independent School District [hereinafter "TISD"] and was in charge of all administrative services including all school district supplies, maintenance and construction. On February 19, 1986, Gary Johnson, an investigator with the Special Crimes Bureau of the District Attorney's office, became involved in the investigation of misappropriation of services and theft of TISD property. Mr. Johnson was investigating thefts in the building maintenance and transportation area of the administrative department. After speaking with various TISD officials, Mr. Johnson set up surveillance of appellant. During his two and one-half week investigation, he interviewed people who possessed information relative to misappropriation of materials and theft of services. On February 20, 1986, Johnson began surveillance of appellant at his home in northeast Houston. He also talked with several people who were appellant's subordinates and located many purchase orders from vendors related to materials and services. On February 27, 1986, appellant called Johnson and asked what he was doing. Johnson told appellant that he was conducting an investigation into alleged thefts at the school. When appellant requested additional information, Johnson responded that he would not discuss the matter on the telephone, but that appellant could come to his office.

Later that same day appellant arrived at the investigator's office. Johnson told appellant that he was not in custody, that he could leave at any time and that any information he gave him would be used or submitted to the grand jury at a later date. Johnson also told appellant that their conversation would be recorded. During their meeting appellant admitted that he had numerous items belonging to TISD at both his East Strack and his Lake Livingston homes. Appellant also admitted that he had used TISD money and TISD school employees, on school time, to purchase

lumber and other materials for his homes. After their meeting, Johnson agreed to accompany appellant the next morning to his two homes to inventory, photograph and take possession of the school property. A criminal charge was filed against appellant based on Johnson's investigation, statements of appellant and other persons and the recovered TISD property.

In point of error one appellant asserts that the trial court erred when it admitted the tape recorded conversation between appellant and Johnson. At trial, appellant stated he had "no objections" to the admission of the tape-recorded conversation. The judge admitted the tape into evidence and then adjourned the trial and deferred playing it until the next day because of the tape's length. The next morning, prior to the tape being played to the jury, appellant objected to the admission of its contents on the grounds that the recorded conversation mentioned other extraneous offenses.

■ The state, citing *Hougham v. State*, 659 S.W.2d 410, 414 (Tex.Crim.App.1983), asserts that appellant's objection was not timely because it was made after the tape was admitted into evidence, but before it was played to the jury. We hold under these circumstances that appellant's objection was timely.

■ However, an objection must also be specific and not general. *Goodrich v. State*, 632 S.W.2d 349 (Tex.Crim.App.1982). A general objection to evidence, part of which is admissible and part of which is not, does not preserve error. The objecting party must point out the part of the challenged evidence that is not admissible. *Alvarez v. State*, 536 S.W.2d 357, 361 (Tex. Crim.App.1976), *cert. denied*, 429 U.S. 924, 97 S.Ct. 325, 50 L.Ed.2d 292 (1976); *see also Beltran v. State*, 728 S.W.2d 382, 387–388 (Tex.Crim.App.1987). Appellant's objection to the tape recording was based on the tape recording containing numerous statements regarding extraneous offenses. Some of the offenses on the tape recording related to the present trial, and other offenses related to offenses charged in another indictment. However, appellant did not point out to the court which particular tape-recorded portions were related to offenses charged in the other indictment. For this reason, we hold that appellant did not preserve any error for appeal. Point of error one is overruled.

In point of error two appellant contends that the trial court erred in admitting evidence of extraneous offenses committed by appellant's wife where no connection was made between appellant and his wife's extraneous offenses. On the evening of February 27, 1986, appellant's wife called Raymond Vyoral and asked him to accompany her to her Lake Livingston cabin. Mr. Vyoral is the director of transportation at TISD and worked under appellant's supervision. At Mrs. Johnson's request, Mr. Vyoral picked her up at the Strack Elementary School located behind her home. Mrs. Johnson and Mr. Vyoral then drove to Trinity. When they arrived, Mr. Vyoral parked the car behind the lake cabin, bent the license plate up on his car and proceeded to help Mrs. Johnson load particular items into his vehicle. One of the items that they removed was a ladder marked with the words "Tomball I.S.D." The items were transported to Willis, Texas that night. The next day Mr. Vyoral told authorities what had occurred the night before and the items were retrieved by the police. Appellant contends that since the state failed to show any connection between appellant and the actions of his wife on the night of February 27, 1986, the evidence of this activity was inadmissible. Appellant cites *Fentis v. State*, 528 S.W.2d 590, 592 (Tex. Crim.App.1975) as authority for his position. However, this issue has not been preserved for our review.

Appellant during cross-examination of Gary Johnson, elicited from him the fact that appellant's "wife tried to sneak back in" and remove items from the Lake Livingston cabin. Appellant then asked Gary Johnson to list the items "which you say his wife tried to sneak back in" and remove.

■ When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired

into by the other. Tex.R.Crim.Evid. 107. Appellant opened the door when he inquired into the removal of the cabin property by Mrs. Johnson. Therefore, we hold the state was permitted to introduce the testimony of Raymond Vyoral. *Hart v. State*, 447 S.W.2d 944, 950 (Tex.Crim.App. 1969). The trial court did not commit error when it admitted Raymond Vyoral's testimony. Point of error two is overruled.

In points of error three and four appellant argues that the trial court erred in denying appellant's motion for a directed verdict because there was insufficient evidence to support the conviction at the time the state rested its case and because there was insufficient evidence to identify and value the property stolen by appellant.

After appellant's motion was denied by the court, appellant presented his evidence in defense of the charges against him. Any possible error in the denial of an instructed verdict is waived when the appellant presents evidence in his defense. *Kuykendall v. State*, 609 S.W.2d 791, 794 (Tex.Crim.App.1980). As a result, appellant waived points of error three and four by presenting evidence to support his defense. However, even if we consider appellant's points three and four as assertions of insufficient evidence to support the conviction, we hold that there was sufficient evidence presented at trial for the jury to find appellant guilty as charged.

The state's original indictment contained seventeen separate allegations of acts committed pursuant to a common scheme and course of conduct; however, the state abandoned all but eight of these during the trial. The state was required to prove that appellant committed one or more acts of theft, pursuant to a continuing course of conduct or scheme, with a total monetary loss of over $750.00 and under $20,000.00. Tex.Penal Code Ann. § 31.03 (Vernon Supp.1988). Since the indictment alleged that the thefts were committed pursuant to one scheme and continuing course of conduct, the *aggregate* dollar amount of the theft must be over $750.00. *Lehman v. State*, 727 S.W.2d 656, 659 (Tex. App.—Houston [1st Dist.] 1987). The jury

was authorized to convict appellant only if the value of the items stolen was more than $750.00 and less than $20,000.00. While the State need not prove every allegation made in the indictment, it must prove every element of an allegation. *See also Cook v. State*, 488 S.W.2d 822, 824 (Tex.Crim.App.1972); *Wiley v. State*, 632 S.W.2d 746, 748 (Tex.Crim.App.1982).

Although there is sufficient evidence in the record to support each of the eight allegations submitted to the jury, the value of the stolen items in paragraph nine of the indictment is sufficient to sustain the jury's finding of guilt. In paragraph nine of the indictment the state alleged that appellant stole thirty-seven pieces of lumber measuring 2″ × 4″ × 8′; thirty-two pieces of 1″ × 4″ × 12′; thirty pieces of 2″ × 6″ × 12′; fifteen sheets of ¼″ plywood; eighty-four pieces of lumber measuring 2″ × 4″ × 12′; fifty-five landscape timbers and fifty pieces of T-111 sheeting. The combined value of these items was over $2,400.00.

Appellant admitted to Gary Johnson that he "acquired by accident" some TISD material. Appellant specifically admitted taking fifteen sheets of T-111 siding which was used at his house. He also admitted taking twelve 1″ × 12″ cedar boards which were used to build a gate entrance at his Lake Livingston house. Moreover, while Gary Johnson was inspecting appellant's lake cabin, Johnson identified the T-111 siding. The siding was identical to the T-111 siding listed on a TISD purchase order dated October 30, 1985, and a Furrow Building Materials invoice dated October 24, 1985. Both the purchase order and invoice were signed on each page by appellant and were in the amount of $2,416.29. Gary Johnson also saw new 2″ × 4″s and 2″ × 6″s which were used in the construction of an outdoor patio. The new 2″ × 4″s and 2″ × 6″s were also identical to the lumber listed in the TISD purchase order and invoice. New plywood, also identical to the plywood on the TISD purchase order and invoice, was used to build a box that encompassed the overhanging rafters at appellant's lake cabin. Gary Johnson also testified to matching up the remaining lum-

ber listed in the invoice and purchase order to the materials used to build a new addition to appellant's lakehouse, greenhouse and decorative boxing.

Mr. Bill Neal, one of appellant's employees and the school district carpenter, testified that appellant gave him a list of "stock" items to purchase. The listing contained particular quantities and sizes of wood and totaled over $2,000.00. Mr. Neal stated that it was not customary for TISD to purchase such a large amount of lumber for stock; rather, large amounts of lumber would be purchased for particular designated jobs. The purchase order and invoices totaling $2,416.29 were identified by Mr. Neal as the ones received when he purchased the long list of items for appellant. Moreover, when this large quantity of lumber arrived at TISD the school district was not engaged in any large projects.

Mr. Bud Daniels, a TISD employee, testified that he recalled seeing the delivery of the large amount of lumber products which collectively made up the purchase order and invoices totaling $2,416.29. Mr. Daniels testified that the Furrow Building Materials truck unloaded the large load on the floor of the northwest back corner of the TISD warehouse. Shortly after the delivery, Mr. Daniels saw appellant drive out of the maintenance shop with a canvas cover over the back bed of his truck. He also saw 2″ × 4″s protruding from the tailgate. Mr. Daniels testified that on another occasion appellant departed the warehouse with plywood, 2″ × 4″s and 2″ × 6″s in his truck. These departures occurred at weekly intervals and were usually on Thursdays or Fridays. On each occasion, Mr. Daniels witnessed appellant driving away with lumber in his pickup. During this same time period Mr. Daniels noticed that the lumber pile in the northwest corner of the warehouse was diminishing. TISD employee Mack Garrett also saw lumber in the back of appellant's truck on three to four occasions.

At Gary Johnson's direction, Mr. Bill Neal conducted an inventory in February of 1986 of the lumber which was delivered by Furrow Building Materials and placed in the northwest corner of the warehouse. The inventory results showed that approximately $1,300.00 worth of lumber items were missing. Gary Johnson testified that appellant stole the $1,300.00 worth of lumber items from the large Furrow Building Materials delivery.

Careful examination of the record has convinced us that there was sufficient evidence presented at trial, on allegation nine, to support the jury's verdict. Moreover, we hold that there was also sufficient evidence presented on the value and identification of the items contained in allegation nine to support the jury's verdict. There being sufficient evidence presented at trial to support allegation nine, we hold that there was sufficient evidence for the jury to determine beyond a reasonable doubt that appellant was guilty of theft as charged. Points of error three and four are overruled.

In point of error five appellant argues there is a fatal variance between the indictment and the evidence presented at trial regarding ownership of the stolen property. Appellant argues that this variance exists because the indictment stated that H.G. Harrington was the owner of the school property while the evidence offered at trial showed that the owners of the school property were the TISD board of trustees. Appellant contends that the state failed to show that H.G. Harrington had a greater possessory right to the school property than did appellant. We disagree. Title to all TISD property is vested in the TISD board of trustees in trust. Tex.Educ.Code Ann. § 24.05 (Vernon 1987). Section 24.05 states in relevant part:

(c) Title to all houses, land, and other property owned, held, set apart, or in any way dedicated to the use and benefit of the public schools of the city or town, whether acquired before or after the establishment of the municipal school district, shall be vested in the board of trustees and their successors in office, in trust for the use and benefit of the public schools in the city or town.

(d) The board shall constitute a body corporate and shall have full power to pro-

tect the title, possession, and use of all school property within the limits of the municipal school district, and may bring and maintain suits in law or in equity in any court of competent jurisdiction when necessary to recover the title or possession of any school property adversely held in the district.

The indictment alleged that H.G. Harrington was the "owner" of the TISD property which was stolen by appellant. Mr. Harrington testified that as superintendent of TISD he acted on behalf of the TISD board of trustees. The term "owner" is a general term. *Thomas v. State*, 621 S.W.2d 158, 161 (Tex.Crim.App. 1981). At trial, the evidence may reveal that the owner has a particular type of ownership (title, or possession, or greater right to possession). However, the indictment may use the general term which, in common language, embraces the special term. Tex.Code Crim.Proc.Ann. art. 21.12 (Vernon 1981); *Thomas v. State*, 621 S.W. 2d at 161 (Tex.Crim.App.1981). We hold that the indictment was not flawed because it alleged that H.G. Harrington was the owner of the TISD property.

Further, the state proved at trial that H.G. Harrington had a greater right to possess the TISD property than appellant. H.G. Harrington was superintendent of the TISD and was appellant's superior. Mr. Harrington testified that he was acting on behalf of the TISD board of trustees in his capacity as superintendent of the school district. It is undisputed that appellant was the assistant superintendent of TISD. These facts in themselves are sufficient to show that H.G. Harrington possessed a greater possessory right to TISD property than appellant. We hold that no material variance existed between the state's indictment and the evidence presented at trial relative to the ownership of the TISD property. Point of error five is overruled.

The judgment of the trial court is affirmed.