John Arlin WALTERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00014–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 1, 2006.
Decided Nov. 3, 2006.

Clifton L. "Scrappy" Holmes, Holmes and Moore, PLLC, L. Charles Van Cleef, Van Cleef Law Offices, P.C., Longview, for appellant.

Christopher Parker, Asst. Dist. Atty., Martin E. Braddy, Dist. Atty., Sulphur Springs, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

John Arlin Walters was convicted by a jury for murder. The jury assessed punishment at thirty-two years' imprisonment, and he was sentenced accordingly. Walters appeals, contending the trial court erred by: 1) refusing to allow him to introduce evidence contradicting the State's evidence; 2) improperly instructing the jury at the guilt/innocence phase; 3) failing to grant a mistrial at the punishment phase when the State commented on Walters' failure to testify; and 4) admitting evidence of expert opinions.

### I. BACKGROUND

Walters shot and killed his older brother, Russell L. Walters, Jr. At the time, Walters was in his late fifties, and Russell [1] was in his late sixties. The shooting was the climax of an apparent long-standing animosity between the two and occurred on a church parking lot after an argument over a water bill. That Walters shot his brother is not at issue. According to Walters, his brother approached Walters' pickup truck while Walters was driving away from the parking lot. Russell followed alongside the pickup on foot, threatening his younger brother. Russell opened the pickup door and had his right hand behind his back. When he did, Walters shot him twice, once in the neck and once in the torso. The only question was whether Walters acted in self-defense. The jury failed to so find.

### II. IMPROPER JURY INSTRUCTIONS

Because the Court unanimously agrees that Walters' second point of error requires reversal and remand for a new trial, we address it first. Walters contends the trial court improperly instructed the jury during the guilt/innocence phase of the trial. Specifically, he contends the court erred by failing to properly instruct the jury concerning threats made by the deceased and the proper consideration of the jury concerning such threats. He also contends the charge erroneously limited his self-defense by including language regarding provocation when there was no evidence to support such a charge.

### A. FAILURE TO INSTRUCT ON THREATS BY THE DECEDENT

■ The entirety of the defense in this case was focused on self-defense. In its charge to the jury, the trial court gave a somewhat confusing, cut-and-paste, instruction on self-defense. Walters requested, and tendered to the court, a proper instruction concerning threats by the deceased:

> You are instructed that where a defendant accused of murder seeks to justify himself on the grounds of threats against his own life, he is permitted to introduce evidence of the threats made, but the same shall not be regarded as affording justification for the offense unless it be shown that at the time of the killing, the person killed, by some act then done, manifested an intention to execute the threats so made and provided that a reasonable person in the defendant's situation would not have retreated.

The trial court denied the request.

There is considerable evidence in the record supporting Walters' request. Walters testified that he informed the sheriff's office in a telephone conversation that his brother had threatened him with a gun in the past. Jackie Ray Patrick, a business acquaintance of Walters, corroborated Walters' testimony by stating that he was

1. We will refer to the decedent by his first name to distinguish him from the appellant.

present on two occasions when Russell pointed a firearm at Walters. Finally, Walters testified that his brother threatened him just before the killing. He testified that Russell told him, "I'm going to come looking for you, and you're not going to like it," and "I'm going to put a stop to you today, once and for all."

■ A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex.App.-Austin 2005, no pet.).

■ Walters complains that the charge, as given, did not adequately inform the jury that apparent danger was to be measured from the standpoint of the defendant, and completely failed to instruct the jury that it could consider prior threats made by the decedent. When a jury considers whether a defendant acted in self-defense, it must "view the reasonableness of the defendant's actions solely from the defendant's standpoint." *Ex parte Drinkert*, 821 S.W.2d 953, 955 (Tex.Crim.App.1991) (citing *Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex.Crim.App.1986)). As the court stated in *Bennett*, the reasonableness of the defendant's belief "must be judged from the standpoint of the accused at the instant he responds to the attack." 726 S.W.2d at 37–38; *Davis v. State*, 104 S.W.3d 177, 181 (Tex.App.-Waco 2003, no pet.).[2]

That viewpoint necessarily includes verbal threats that occurred before, as well as at the time of, the incident at bar. The instruction on self-defense sent to the jury in this case does instruct the jury that the defendant may use deadly force to the degree he reasonably believes the deadly force is immediately necessary to protect himself, and then later defines a "[r]easonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." It does not, however, contain any language explaining to the jury that it could, in its consideration of self-defense, consider verbal threats made by the decedent toward Walters. Further, the only mention of verbal provocation found in the instruction is a limitation on self-defense stating that the use of force "is not justified in response to verbal provocation alone."[3]

As acknowledged by the Texas Court of Criminal Appeals in *Ellis v. State*, 811 S.W.2d 99 (Tex.Crim.App.1991), a defendant is entitled to a charge regarding verbal threats made by the victim toward the defendant—and not only those that occurred at the time of the shooting. *See Barkley v. State*, 152 Tex.Crim. 376, 214 S.W.2d 287 (1948) (cited by *Ellis*, 811 S.W.2d at 101, also noting threats on days before the killing).

■ The standard of review for errors in the jury charge depends on whether the defendant properly objected. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.

---

2. *See Turner v. State*, 87 S.W.3d 111, 117–18 (Tex.Crim.App.2002), agreeing that the self-defense claim should be reviewed based on the *standpoint of the actor*—but emphasizing that the actor should be the hypothetical ordinary and prudent person, rather than the standpoint of a sociopath.

3. We also note that the sample charge provided in Section 12:1100.40 of the Texas Criminal Jury Charges, contains a paragraph that explains much more clearly to the jurors the necessity to place themselves in the defendant's position at the time, and to consider all the facts and circumstances including the previous relationship between the two in making its determination. 2 BERRY & GALLAGHER, TEXAS CRIMINAL JURY CHARGES § 12:1100.40 (2005).

Crim.App.1998); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex.App.-Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error "is calculated to injure the rights of defendant." *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.*

Counsel objected on these grounds and tendered a correct instruction. In light of the fact that self-defense was the only real issue before the jury, we hold that the trial court's failure to specifically instruct the jury concerning prior verbal threats by the decedent was "calculated to injure the rights of the defendant" and was, therefore, harmful, and reversible error. We sustain Walters' contention.

### B. Erroneous Provocation Instruction

■■■■ Walters also states, in a single sentence in his brief, that the charge erroneously included language regarding provocation by the defendant, although there was no evidence that he provoked the decedent. This contention is unsupported by any analysis or argument. When a point of error is inadequately briefed, we will not address it. *Vuong v. State*, 830 S.W.2d 929 (Tex.Crim.App.1992). We may not brief a defendant's case for him or her. *See Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex.Crim.App.1995). Although this issue was clearly preserved at trial, it is inadequately briefed on appeal, and is overruled.

### III. Three 9–1–1 Calls and a Fourth Telephone Call

■■ Walters also contends the trial court erred by "allowing the State to publish 911 tape conversations to the jury, then denying defendant's request to introduce identical, contradictory evidence, thereby denying him confrontation of witnesses for the State and requiring him to testify in his own defense." The context of this alleged error came during the testimony of sheriff's deputy Sean English, a dispatcher for the sheriff's office at the time of the shooting.

English testified on direct examination concerning three 9–1–1 calls received at the sheriff's office on the day of the shooting, and one telephone call he initiated to Walters immediately following the 9–1–1 calls. The first 9–1–1 call, received at 2:06 p.m., was from an unidentified female calling from the Tabernacle Baptist Church about "some type of disturbance." English dispatched an officer to the area. At 2:08 p.m., English received another 9–1–1 call with regard to the situation at the Tabernacle Baptist Church. This call was from an unidentified male at Walters' residence who informed English that "[a] man has been shot at the ... church." English then dispatched emergency medical services' personnel and other officers to the scene. A third 9–1–1 call was received at 2:13 p.m. from a person identified as Carolyn Mobley, calling from a cell phone. This caller advised she was at the church parking lot with the shooting victim, whom she identified as "Russell Walters." She further advised that "John Walters" was the shooter and that he had gone to his residence. Mobley described the location of that residence, which was nearby. English advised the officers of this information, and two units went to Walters' residence. The State then offered its Exhibit No. 1, a CD recording that included the three 9–1–1 calls from that day. Walters objected on the ground of hearsay, but the objection was overruled and the recording of the three 9–1–1 calls was played for the jury.

English then testified that, after the three 9–1–1 calls, at approximately 2:25 p.m., he placed a telephone call to the "John Walters residence" from which he had received the second 9–1–1 call. English testified that the male person who answered the telephone identified himself as "John Walters" and that it appeared to be the same person who made the second 9–1–1 call. English said he then asked Walters if he wanted to talk about what had happened. The State interrupted English and proceeded to question him about what was said to Walters concerning the firearm used in the shooting. English testified he told Walters to unload the firearm and put it away. He also said he told Walters the officers were outside his house and for him to "come out with his hands up where the officers could see them." English quoted Walters as saying "he'd hang the phone up, and he'd be right out." This telephone conversation between English and Walters was also recorded at the sheriff's office.

On cross-examination, English reiterated that, after the three 9–1–1 calls, he telephoned Walters and asked him if he wanted to talk about what had happened. However, when Walters' counsel asked English what Walters had said in response, the State objected on the ground of hearsay. The trial court sustained the objection.

Walters later offered into evidence a CD recording of the three 9–1–1 calls, plus the telephone call English initiated to Walters. The trial court reiterated its previous ruling concerning the call English made to Walters and denied Walters' offer to publish that conversation to the jury. The court, however, received the evidence for the record on Walters' offer of proof.

That evidence shows that, when English telephoned Walters and asked him, "What's happening, man?" Walters responded, "My brother came up here threatening me, one of several times. He told me one time that he was going to kill me, out there at the barn." Walters contends this evidence was admissible under three rules of evidence: the rule of optional completeness,[4] as a present sense impression,[5] and as an excited utterance.[6] Because the rule of optional completeness compelled the admission of this evidence, it is unnecessary to discuss the other grounds for admission contended by Walters.

**A. STANDARD OF REVIEW**

■ The standard of review for a trial court's ruling under the rules of evidence is abuse of discretion. *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim.App.1998). As explained below, to admit into evidence—over a hearsay objection—three of four related telephone conversations, and then exclude the fourth conversation—by sustaining a hearsay objection—was an abuse of discretion.

**B. RULE OF OPTIONAL COMPLETENESS**

■ Under the rule of optional completeness, when only a portion of an act, declaration, conversation, writing, or recorded statement is introduced, the adverse party is entitled to introduce into evidence the remaining parts or any related act, declaration, writing, or recorded statement necessary to a full understanding of the evidence, or to explain that evidence. TEX.R. EVID. 107. Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully

---

4. TEX.R. EVID. 107.

5. TEX.R. EVID. 803(1).

6. TEX.R. EVID. 803(2).

and fairly explain a matter "opened up" by the adverse party. *See Johnson v. State,* 747 S.W.2d 451, 453–54 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). "The so-called rule of optional completeness takes effect when other evidence has already been introduced but is incomplete and misleading." *Jones v. State,* 963 S.W.2d 177, 182 (Tex.App.-Fort Worth 1998, pet. ref'd). "Once an evidentiary door has been opened by one side, this rule serves to allow the other side to complete the picture." *West v. State,* 121 S.W.3d 95, 103 (Tex.App.-Fort Worth 2003, pet. ref'd).

Rule 107 was implicated in this case when English testified that he asked Walters if he wanted to talk about what had happened. To then exclude Walters' response deprived the jury of the remaining parts necessary to a full understanding of the evidence, in violation of the rule of optional completeness. Walters' recorded response to English's question was "necessary to fully and fairly explain a matter 'opened up' by the adverse party." *See id.* at 103. The absence of Walters' response made English's testimony incomplete.

The State contends this evidence was properly excluded as hearsay. However, when a party "opens the door" on an issue by attempting to present an incomplete picture of an incident, the opposing party is then permitted to complete the picture by presenting evidence that would have otherwise been inadmissible. *Arebalo v. State,* 143 S.W.3d 402, 408 (Tex.App.-Austin 2004, pet. ref'd).

Walters contends that, because he did not offer the recording for the truth of the words spoken, it was not hearsay. He argues that, because the State was allowed to create a false impression that Walters was calm about shooting his brother, the excluded evidence was necessary to dispel that falsehood and in order for him to cross-examine witnesses regarding his alleged calmness.

The State made Walters' state of mind a key issue in this case by focusing on Walters' calm demeanor during the conversations with police. Walters' demeanor was so presented to show that his actions were calmly intentional and premeditated. This focus is apparent in the State's questioning of English concerning the second 9–1–1 call:

Q I want to talk to you specifically about the second 9–1–1 call that came from the suspect, John Walters', residence. From that phone call, was there any indication, during that call, as to that the person calling was the person that did the shooting?

A Not at that time, no.

Q Was there anything that would suggest that during that call?

A No, sir.

Q All right. And would you classify the emotional state of that particular caller as being excited?

A No, sir.

Q What would you characterize it as being during that call?

A Calm.

. . . .

Q ... From your experience as being a dispatcher for three years, have you ever received calls like this before with regards to incidents?

A Like this before?

Q Yeah.

A No, sir.

Q Where just somebody would call and say, "Hey, somebody's been shot"?

A No, sir, not exactly in those words.

Q All right. Seemed to be a little out of the ordinary?

A A little bit.

Q What would you have expected?

A Somebody very excited, shaky, even, maybe.

Q Did you get that here on this 9–1–1 call?

A No, sir.

English's testimony concerning his conversations with Walters consisted of the declarations of two individuals as recounted by one participant, including only a portion of the content, but describing Walters' demeanor. Walters sought to introduce a recording of the entirety of those conversations, that would have included the remainder of the content, and allowed the jury to determine for itself his demeanor without filtration through a third party. This is the very purpose of the rule of optional completeness. *Compare Credille v. State*, 925 S.W.2d 112, 116–17 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) (when defendant questioned witness about content of videotaped interview, State entitled to offer videotape into evidence); and *Solano v. State*, 728 S.W.2d 428, 430–31 (Tex.App.-San Antonio 1987, pet. ref'd).

## C. HARM ANALYSIS

▮ The next question is whether the error harmed Walters. At trial, and now on appeal, Walters argued that because the recording was not admitted, it would become necessary for him to relinquish his Fifth Amendment rights and take the stand in order to place his emotional state before the jury. The State contends the exclusion of the evidence was necessarily harmless because Walters testified about those matters. That misses the point of Walters' argument: that he only testified because the court erroneously refused to admit the only other evidence that could show his state of mind or demeanor and that it, therefore, became necessary for him to testify and give up his right to

remain silent in order to have any way to adequately confront and cross-examine the witnesses against him. Walters contends the recording would have assisted the jury in determining his state of mind and demeanor—certainly more than his trial testimony—and that, had that recording been admitted, he *would not* have subjected himself to cross-examination. This is the same argument raised before the trial court, and it is fairly before us now.

▮ Walters' contention contains connected constitutional components. The right to remain silent is raised, the argument being that it was violated because the erroneous exclusion of evidence required Walters to testify so that his defensive theory could be raised by something more than rank speculation. His right to adequately confront and cross-examine the State's witnesses is likewise raised. A defendant's federal Sixth Amendment right to confront and cross-examine adverse witnesses is an essential element of a fair trial. *See Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Confrontation Clause of the United States Constitution guarantees the accused an adequate opportunity to cross-examine an adverse witness. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The constitutional right of confrontation means something more than merely bringing the accused and the witnesses face to face; it embodies and carries with it the valuable right of cross-examination of the witness. *Baltierra v. State*, 586 S.W.2d 553, 557 (Tex.Crim.App. 1979).

▮ Error in the admission of evidence is not itself typically of constitutional dimension.[7] Exclusions of evidence reach

---

7. Where erroneous exclusion of evidence is the result of misapplication of the rules of

evidence and its admission is not claimed to be required by the United States or state

constitutional dimension and are unconstitutional if they "significantly undermined fundamental elements of the accused's defense." *United States v. Scheffer*, 523 U.S. 303, 315, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); *Potier*, 68 S.W.3d at 666. In this case, the record shows that error directly resulted in the violation of not one, but two separate constitutional rights. The error is constitutional in scope. As a constitutional error, the appellate court applies Rule 44.2(a) and reverses unless it determines beyond a reasonable doubt that the error did not contribute to the appellant's conviction or punishment. *See* TEX.R.APP. P. 44.2(a). It cannot be so determined in this case.

Neither the record nor the State suggest any other method by which Walters might have provided any underpinning to his defensive argument—that his actions were not premeditated or calmly and coolly taken—than either the excluded evidence or his own testimony. Counsel stated categorically at the trial that Walters would have to take the stand if the evidence was not admitted, and that is precisely what happened. Walters did present his position, but also subjected himself to exhaustive cross-examination by the State totaling ninety-one pages of the reporter's record.

Further, neither the record nor the State suggest any other method of providing Walters with a basis for confronting and adequately cross-examining English about Walters' mental or emotional state as shown by the recording, or a nurse who also opined about his emotional state during the second 9–1–1 call.

Under these facts, and in light of the entirety of the record, it cannot be concluded beyond a reasonable doubt that the error did not contribute to Walters' conviction or punishment.

## CONCLUSION

Because we unanimously hold that the trial court's failure to instruct the jury concerning prior verbal threats by the decedent was harmful error, we reverse the judgment and remand to the trial court for a new trial.

Concurring Opinion by Justice CARTER.

CARTER, Justice, concurring.

Because I agree with the lead opinion that the failure to instruct the jury concerning prior verbal threats was reversible error, I concur in that part of the lead opinion and in the judgment remanding the case for a new trial. However, I disagree with the analysis regarding the application of the rule of optional completeness.

It is important to place the conversations of John Arlin Walters in the proper sequence to understand the context of the issue. Sean English received his first call from Walters (at which time he only knew it was a male voice from Walters' residence) at 2:08 p.m. This call simply informed English that "[a] man had been shot at the ... church." This call was recorded and played in its entirety for the jury. At 2:25 p.m., English then called Walters' residence and had conversed with Walters. These are the only two conversations that have any relevance to the

constitutions, we analyze harm under Rule of Evidence 103(a), which provides that error may not be predicated upon a ruling that admits or excludes evidence unless a "substantial right" of the party is affected. TEX.R. EVID. 103(a); *Potier v. State*, 68 S.W.3d 657,

666 (Tex.Crim.App.2002). The standard is the same as that under Rule 44.2(b). TEX. R.APP. P. 44.2(b); *Elmore v. State*, 116 S.W.3d 801, 808 (Tex.App.-Fort Worth 2003, pet. ref'd).

issue of the admissibility of Walters' statements to English. The lead opinion states that Rule 107 was implicated when English testified that he asked Walters if he wanted to talk about what happened. It must be noted that the State did not attempt to introduce any statements of Walters from this conversation other than Walters' statement that he would "be right out." Likewise, the State never sought to introduce the tape-recorded conversation from this telephone call. In fact, there was no reference made that such a recording even existed until counsel for Walters cross-examined English. Clearly, the tape-recorded conversation itself was inadmissible as the State had not attempted to offer any portion of it into evidence. *See Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim.App.1993).

The testimony of English about the conversation with Walters included only the statement from Walters that he would "be right out." It is proper to introduce a conversation when specific statements made during the conversation which, taken out of context, could have created the possibility of the jury receiving a false impression from hearing only a part of the conversation. *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex.Crim.App.2004). But here, the State did not introduce any specific statement from that conversation that could mislead the jury. The suggestion is that English's general statement that he asked Walters if he wanted to talk about what happened is somehow misleading the jury or allowing the jury to receive a false impression from hearing only that question. I disagree that any testimony of English regarding this call to Walters had any tendency to mislead, confuse, or leave a false impression with the jury. Therefore, that justification for admitting this hearsay testimony of Walters' comments to English is not present.

Further, the optional completeness rule requires that, when part of a conversation or recorded statement is given in evidence by one party, the whole *on the same subject* may be inquired into which is necessary to make it fully understood or to explain the same. TEX.R. EVID. 107. Only parts or items of evidence germane to the part or item offered ("on the same subject") become admissible. *Arebalo v. State*, 143 S.W.3d 402, 408 (Tex.App.-Austin 2004, pet. ref'd). Was the evidence proffered by Walters on the same subject as that presented by the State? I do not believe that it was. The subject introduced by the State concerned the desire of the police officers for Walters to peacefully surrender. In response, Walters sought to introduce his statements concerning threats Russell Walters made to him. The purpose of the rule of optional completeness is to "reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only part of an act." *See Kinnamon v. State*, 791 S.W.2d 84, 101 (Tex.Crim.App.1990) (citing *Evans v. State*, 643 S.W.2d 157, 161 (Tex.App.1982)), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994). This rationale explains why it is necessary for the proffered testimony to address the same subject matter as that introduced by the other party. The State did not attempt to offer any evidence that could be regarded as inquiring into whether Walters was justified in killing his brother. Consequently, it was not proper to allow Walters to offer hearsay testimony on that subject. The Texas Court of Criminal Appeals has explained that the evidence must be relevant to the issue originally placed before the court. *Jernigan v. State*, 589 S.W.2d 681, 694—95 (Tex. Crim.App. [Panel Op.] 1979).

In similar situations, courts have approved limitations placed on the scope of testimony. In *Goldberg v. State*, 95

S.W.3d 345, 387 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd), an officer testified about his conversation with the defendant and said that he discussed with him his "activities of the day" and the defendant told him he had been playing football and gave the officer names of people who had been playing football with him. Thereafter, the defendant sought to inquire of the officer everything the defendant told the officer about the "activities of the day." The trial court, properly, allowed Goldberg to question Sampson about the same subject, i.e., Sampson's conversation with Goldberg regarding the football game. It did not, however, allow Goldberg to present, through the state's witness, his entire version of the events of the day of the murder. The court reasoned that the evidence sought to be introduced was not on the same subject and would have been self-serving hearsay by Goldberg and that it was not necessary to correct a false or incorrect impression created by the officer's testimony. *See Jones v. State*, 963 S.W.2d 177, 182 (Tex.App.-Fort Worth 1998, pet. ref'd) (stating Rule 107 permits self-serving hearsay statements by defendant only when necessary to correct false impression created by hearing only part of statement).

Here, the evidence presented by the State that an officer called Walters' home and talked with him contains no conversation that requires or authorizes the introduction of hearsay evidence to correct. The only reference to a statement by Walters was that "he'd be right out." The statements made to the officer by Walters concerning his justification for shooting Russell are not germane to any issue placed before the court and jury by the State. Consequently, I do not believe the rule of optional completeness applies in this situation. The court properly sustained a hearsay objection to the evidence.

Similarly, the call to Walters' residence is not a continuation of the prior conversation that would require admission to complete the cycle of conversations. The telephone calls stand independently, and one is not needed to understand the other. Walters argues that it was necessary to introduce his statement to English concerning Russell's threats because the State had urged that Walters' demeanor was calm, not excited. However, a close examination of the record reveals that the evidence concerning Walters' demeanor referred only to the 9–1–1 call Walters made reporting that "[a] man had been shot at the . . . church." The entire passage quoted in the lead opinion concerning the demeanor issue refers to the 2:08 p.m. call that Walters apparently made to the 9–1–1 operator and does not involve the later call English made to Walters. The State made it clear in questioning the officer about the demeanor of Walters, that it was referring to the earlier 9–1–1 call, not the call English later made to the residence. English explained that the caller (who he did not know was Walters when the call occurred) was not emotional, but was calm. He further stated that this was extraordinary and that he would have expected the caller to be more excited. However, it cannot be argued that the jury was uninformed as to Walters' demeanor during the 2:08 p.m. call, as this entire telephone conversation was played for the jury, and the jurors could evaluate Walters' tone and demeanor just as English did. The State did not attempt to introduce any evidence of Walters' demeanor during the conversation, which occurred when English called Walters' residence. The two telephone calls are not intertwined, and they are not continuations of a single conversation. Indeed, as previously pointed out, the final call by the deputy to the home of Walters was not a continuation of the prior call, but an attempt to ensure that Walters was not

about to shoot the officers who were then converging on Walters' residence. Essentially, the lead opinion holds that, since English testified that Walters sounded calm during his first call (which was played to the jury), Walters should be allowed to introduce the content of the unrelated second conversation, presumably to show he was not calm during the second conversation. Since the State did not present any evidence concerning Walters' demeanor during the 2:25 p.m. call, there was no justification for allowing the hearsay testimony as rebuttal of demeanor evidence.

We review the admission and exclusion of evidence for an abuse of discretion, and we do not reverse the decision absent a clear abuse of discretion. *See Apolinar v. State,* 155 S.W.3d 184, 186 (Tex.Crim.App. 2005). A court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Id.; see Green v. State,* 934 S.W.2d 92, 102 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g). In this instance, I do not believe that the trial court was outside the zone of reasonable disagreement in excluding the proffered testimony. I do not believe an abuse of discretion has been shown, and I would affirm this portion of the case.

I concur in the judgment of the court.

Chief Justice MORRISS joins in this concurring opinion.