TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00300-CR







Michael Vincent Morales, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 97-363-K368, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING






 Michael Vincent Morales, appellant, was convicted of indecency with a child, and
the jury assessed his punishment at eight years' imprisonment. See Tex. Penal Code Ann. § 21.11
(West 1994). Appellant contends in three points of error that the trial court erred (1) in admitting
evidence of extraneous offenses; (2) in admitting a tape recording of a telephone call from the
mother of the complaining witness to appellant on the day she learned of the offense; and (3) in
admitting a series of photographs showing the injuries sustained by the victim of the extraneous
sexual assault. We will affirm the conviction. 


Background Facts

 On March 18, 1997, three-year-old D.C. was riding with her mother, Belinda, and
her aunt Cynthia in the aunt's pickup truck. D.C. told the two women, "Tio touched my pee-pee." D.C. showed what she meant by touching her vagina with her middle finger. The only
person the complainant knew as "Tio" was her uncle Mike, the husband of Cynthia, the aunt who
heard the outcry with the mother. Cynthia and appellant frequently babysat D.C. while Belinda
was at work. D.C. told her mother that the incident occurred at appellant's house, when she was
sitting on the living room couch watching cartoons. 

 Belinda contacted law enforcement and met with the chief of police of Florence. 
During the meeting, she placed a call to appellant at his residence and told him what D.C. had
said. The police chief tape recorded the call with Belinda's consent. Appellant denied the offense
and said, "you and your folks got me marked already."

 At trial, in appellant's opening statement, made before the State presented its case-in-chief, appellant argued that "the evidence is going to show in the course of this trial that this
case is about a family feud; its about a feud that has been going on for about eight years between
[appellant] and his in-laws." Appellant's defensive theory appeared to be that Belinda and the rest
of her family disliked appellant and that Belinda fabricated the indecency with a child charge to
get back at him. 

 The State offered the tape recording in evidence and it was admitted. On cross-examination of Belinda, appellant asked, "Has there not been bad blood between you and
[appellant] for the past eight years?" Belinda answered, "Yes, we've had arguments and stuff." 
In reference to appellant's recorded comment that the family had him "marked already," appellant
asked Belinda: "Do you know what he means by that?" Belinda replied, "his past." Appellant
then asked: "His past is?" Later during cross-examination appellant asked Belinda, "Isn't it true
you dislike [appellant] greatly?" She replied: "I do now." 

 On redirect examination, the State asked Belinda: "Well, you should have hated
him for brutally raping your sister back in 1989, shouldn't you?" Appellant objected on the basis
that it concerned "an extraneous offense that has no merit in this case." Appellant argued that he
had asked questions about the bad blood and the family having him marked to show that the
reasons that the family did not like him was that he flirted a lot, was suspected of having an affair
with a sister-in-law, the wife of a brother of Cynthia and Belinda, ran around a lot, and was a
playboy. Appellant also was referring to an incident in which he was accused of trespassing in
his mother-in-law's house and was charged with an offense and he pleaded guilty to criminal
trespass. He was also referring to another occasion on which he was alleged to have gone into his
mother-in-law's house during a family reunion, and to have taken one of Cynthia's cousins into
a back room and attempted to kiss her. The police were called, appellant fled, and he was arrested
for evading arrest. Appellant pleaded guilty to the evading arrest charge. 

 Appellant argued that he just wanted to show that the family disliked him for these
incidents. He contended that he did not open the door to other extraneous offenses the State
wanted to introduce to show why the family disliked him. The State wanted to introduce evidence
about the aggravated sexual assault of the sister of Cynthia and Belinda and his "peeping" in the
windows of Belinda's and Cynthia's cousins, nieces, and sisters-in-law. Following argument on
the matter outside the presence of the jury, the trial court ruled that appellant's cross-examination
asking the witness about specific extraneous offenses and acts had opened the door to the State's
showing the other extraneous offenses in appellant's past. 

 Continuing on redirect, the State developed evidence that appellant had been
accused of physically and sexually assaulting Yolanda, a sister of Belinda and Cynthia, in her
parent's home when she was about twenty years old, in 1989. Belinda described Yolanda as very
shy and quiet, a person who did not go out or date, and who was "not all there." Yolanda had
been in special education classes. Yolanda identified appellant as her attacker on the night of the
offense. Later, Yolanda's family persuaded her to sign an affidavit of nonprosecution withdrawing
her identification of appellant as her attacker. In connection with the evidence of the aggravated
sexual assault, the trial court admitted, over appellant's objection, pictures taken after the assault
which showed that Yolanda had been severely beaten about her face and upper body.


Extraneous Offense

 Appellant's first point of error contends that the trial court erred by permitting the
State to introduce evidence of the 1989 aggravated sexual assault of Yolanda. His objection was
that it was "an extraneous offense that has no merit in this case." A decision by a trial court to
admit evidence is reviewed by an appellate court under the abuse of discretion standard. Green
v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. denied, 117 S. Ct. 1561 (1997);
Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). An appellate court
should not reverse a trial court decision on admission of evidence as long as the ruling was within
a "zone of reasonable disagreement." Id.

 The trial court apparently admitted the evidence of appellant's sexual assault of his
sister-in-law Yolanda under the rule of optional completeness. Tex. R. Evid. 107. (1) The purpose
of the rule is to reduce the possibility of the fact finder receiving a false impression from hearing
the evidence of only part of an act. Evans v. State, 643 S.W.2d 157, 161 (Tex. App.--Austin
1982, no pet.). "Under this provision, rebuttal testimony is admissible, even though it contains
evidence of extraneous offenses." Id. See Credille v. State, 925 S.W.2d 112, 116 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd); Callaway v. State, 818 S.W.2d 816, 827 (Tex.
App.--Amarillo 1991, pet. ref'd). When defense counsel pursues a subject that would ordinarily
be outside the realm of proper comment by the prosecutor, he opens the door and creates a right
of reply for the State. Parr v. State, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977). Once a matter
is injected into the proceeding, evidence to fully explain the matter becomes relevant and
admissible, even though the evidence might not otherwise be admissible. Id. Rule 107 is designed
to guard against "the possibility of confusion, distortion or false impression that could rise from
the use of an act, writing, conversation, declaration or transaction out of proper context." 
Livingston v. State, 739 S.W.2d 311, 331 (Tex. Crim. App. 1987). When a defendant opens the
door on an issue by attempting to present an incomplete picture of an incident, the State is
permitted to complete the picture. Skillern v. State, 890 S.W.2d 849, 864 (Tex. App.--Austin
1994, pet. ref'd). However, a party may not stray beyond the scope of the invitation. Schutz v.
State, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997). The rule only permits admission of evidence
on the same subject as previously admitted. Roman v. State, 503 S.W.2d 252, 253-54 (Tex. Crim.
App. 1974); Lawson v. State, 854 S.W.2d 234, 238 (Tex. App.--Austin 1993, pet. ref'd).

 Permitting the State to fully explain the matter raised by appellant was clearly the
trial court's intention in the instant case. The court admitted this evidence in order to complete
the picture begun by appellant of the reasons for the "feud" between him and his in-laws. 
Appellant asked the complaining witness's mother about several relatively minor offenses and bad
acts appellant had committed, apparently to demonstrate the family's impliedly unjustified
animosity toward him, and to suggest that that was the motive for Belinda's influencing C.D. to
make a false accusation. Also, appellant asked the witness a broad and open-ended question about
the appellant's past. In a similar case of aggravated sexual assault of a child, the defendant's
counsel cross-examined the complaining witness by introducing portions of her statement to the
police into evidence. Defense counsel was attempting to show that the questioner had suggested
certain answers to the child. The State was permitted to introduce the balance of that statement. 
Espinoza v. State, 828 S.W.2d 53 (Tex. App.--Houston [14th Dist.] 1991), aff'd, 853 S.W.2d
36 (Tex. Crim. App. 1993). In the instant case, appellant presented only part of the basis for the
family's views on appellant's past behavior, and the State was permitted to complete the picture. 
We do not believe that the trial court abused its discretion. Appellant's first point of error is
overruled. 


Admission of Photographs of Injuries of Sexual Assault Complainant

 Appellant's third point of error complains of the admission of twelve photographs
of the complainant, Yolanda, in the extraneous sexual assault. He objected to admission of the
photographs on the ground of lack of relevance, under Rule 402, and contends that the trial court
erred in not excluding the evidence under Rule 403 because the probative value of the evidence
is substantially outweighed by the danger of unfair prejudice. 

 Admissibility of photographs over challenges are within the sound discretion of the
trial court. See Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Rule 403 favors
the admission of relevant evidence and carries a presumption that relevant evidence will be more
probative than prejudicial. Etheridge v. State, 903 S.W.2d 1, 21 (Tex. Crim. App. 1994); Green
v. State, 840 S.W.2d 394, 410 (Tex. Crim. App. 1992); Montgomery v. State, 810 S.W.2d 372,
389 (Tex. Crim. App. 1990).

 As to the relevance issue, we believe our determination of appellant's first point of
error, that the trial court did not abuse its discretion by admitting evidence about this extraneous
offense in general, resolves the issue as to evidence about the offense. Yolanda testified that
appellant struck her repeatedly with his hands. Her brother, Gilbert, testified that he saw Yolanda
after the sexual assault and that her face was all swollen up and bruised and that she said appellant
had done this to her. Yolanda's sister Belinda testified that she saw Yolanda after the assault and 
the pictures accurately showed how Yolanda looked at that time.

 As to the specific relevance of the photographs of the sexual assault victim's
injuries, the general rule is that if a verbal description of an object or scene is admissible, then a
photograph of that subject or scene is also admissible. Emery v. State, 881 S.W.2d 702, 710 
(Tex. Crim. App. 1994). In other words, if verbal testimony is relevant, photographs of the same
are also relevant. Williams v. State, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997). See also
Jones v. State, 944 S.W.2d 642, 651-52 (Tex. Crim. App. 1996). Appellant has not demonstrated
anything about these photographs that would put them beyond the general rule. 

 The test for admissibility of photographs is that a photograph must possess some
probative value and its probative value must not be substantially outweighed by its inflammatory
nature. Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998); Long v. State, 823 S.W.2d
259, 272 (Tex. Crim. App. 1991). See also Tex. R. Evid. 403. In Rojas, the court stated:

 

 Relevant factors in making this determination include: the number of exhibits
offered, their gruesomeness, their detail, their size, whether they are black and
white or color, whether they are close up shots, whether the body is naked or
clothed, the availability of other means of proof, and other circumstances unique
to the individual case.



Rojas, 986 S.W.2d at 249 (citations omitted).

 Appellant's brief describes the photographs as follows: "The pictures show Yolanda
[last name omitted] badly beaten. She is black and blue, with extremely swollen eyes and lip." 
The State does not disagree with the accuracy of the description. The record contains only black
and white photocopies of the photographs. Eight pictures are in a square format of about 3 ½
inches by 3 ½ inches. Three of the pictures are rectangular, about 3 ½ inches by 5 inches. The
subject is clothed in all pictures, either in a hospital gown or street clothes. The pictures show 
Yolanda's injuries from different aspects, with views of full-face, left side, right side, and with
head raised back to display the neck. There are two pictures of Yolanda's back and right shoulder
with her hospital gown pulled open at the back only enough to show the injuries to these parts of
her body. While the number of pictures is arguably excessive, the series could also be considered
simply thorough in displaying separate injuries to various parts of the victim's body. The
photographs are not excessively gruesome. They do not show blood or open wounds. There are
no extreme closeups. Photographs showing a victim's wounds may be properly admitted to clarify
and support observations and conclusions about the victim's injuries and not solely to inflame the
minds of jurors. See Madden v. State, 799 S.W.2d 683, 697 (Tex. Crim. App. 1990). Although
a crime scene photograph may be gruesome, that fact alone will rarely render the photograph
necessarily inadmissible under Rule 403. Narvaiz v. State, 840 S.W.2d 415, 430 (Tex. Crim.
App. 1992). None of the photographs are "so horrifying or appalling that a juror of normal
sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case
after viewing them." Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992).

 Appellant has not specified how he believes the trial court erred in determining the
photographs were more probative than prejudicial, or how their admission significantly differs
from the testimony about the same injuries. The court of criminal appeals has held that an
appellant's failure to explain why the photographs would "cause a jury to rely upon emotion"
constitutes inadequate briefing on the issue. Williams v. State, 937 S.W.2d 479, 487-88 (Tex.
Crim. App. 1996). In the same case, the court said that relevant photographs are admissible under 
Rule 403 even if they merely corroborate other kinds of evidence. Id.

 We have reviewed this point for any abuse of discretion on the part of the trial
court, and we do not believe that its decision to admit the photographs was outside the zone of
reasonable disagreement. We overrule point of error three. 


Admissibility of Tape Recording


 Appellant contends in his second point of error that the trial court erred by
admitting into evidence the tape recording made by the chief of police of Florence of a
conversation between Belinda, the victim's mother, and appellant. He argues that recording the
conversation violated Penal Code section 16.02, and since making the recording was illegal, it had
to be excluded from evidence under the Texas exclusionary statute. Tex. Code Crim. Proc. Ann.
art. 38.23(a) (West 1979) (no evidence obtained in violation of federal or State constitutions or
laws may be admitted in a criminal case). 

 The penal code makes it an offense for a person to intentionally intercept a wire
communication, but provides an affirmative defense to prosecution if done by a person acting
under color of law if a party to the communication consents to the conversation being recorded. 
Tex. Penal Code Ann. § 16.02(b), (c)(3) (West 1994). Appellant argues that even though an
accused sustains his burden of proving an affirmative defense by a preponderance of the evidence,
he has still committed the offense for purposes of exclusion under Code of Criminal Procedure
article 38.23(a). Specifically, appellant argues: 

 

Texas Penal Code Section 16.02 clearly states that an offence is committed if there
is an intentionally [sic] interception of a wire, oral or electronic communication. 
Yes, there are affirmative defenses outlined in the statute, but it does not negate the
fact that an offense was committed. The affirmative defense does not make the
actions of [Belinda] and [chief of police] legal, it simply provides an excuse for the
criminal conduct. Clearly, an offense was committed when [they] tape recorded
the conversation between [Belinda] and the appellant. The intercepted phone
conversation is still illegal and inadmissible under article 38.23(a).

 

 Appellant asserts that this position is supported by the case of Hernandez v. State,
938 S.W.2d 503, 506 (Tex. App.--Waco 1997, pet. ref'd). To the contrary, while the appellate
court acknowledged that the argument was made in that case, the court's answer was that, even
if the defendant's argument about affirmative defenses were valid, it would not apply in that case
because the prior version of the statute applied. The court distinguished the previous version of
the wiretapping statute, which was applicable to that defendant, on the basis of there being
exceptions rather that affirmative defenses in the prior law. The court was careful to point out in
a footnote: 

 

 Our explanation of the differences between the new and old versions of
section 16.02 of the Penal Code is to aid in the understanding of Hernandez's
argument. We are not to be read as holding that a different result would occur
under the current version of the statute.

 


 Id. at 506 n.5.

 This case does not support appellant's argument, but points out the fault in it. The
court points out that the only real difference between an "exception" and an "affirmative defense"
is that the new label "merely alters the burden of proof." Id. at 506. 

 The provision that permits Belinda and the chief of police to show that they are
within the affirmative defense of making a recording with the consent of one of the parties, begins
by stating: "It is an affirmative defense to prosecution under Subsection (b) that . . . ." Section
2.01 of the Penal Code provides: 

 

 All persons are presumed to be innocent and no person may be convicted
of an offense unless each element of the offense is proved beyond a reasonable
doubt. The fact that he has been arrested, confined, or indicted for, or otherwise
charged with the offense gives rise to no inference of guilt at his trial.



Tex. Penal Code Ann. § 2.01 (West 1994).

 Since all persons are presumed innocent, and it is a defense to prosecution (and
ultimately to conviction) that a person comes within one of the specified affirmative defenses, we
cannot accept appellant's interpretation that a person has still committed an offense even if he
proves that he comes within a statutory affirmative defense. Appellant presents no authority for
this proposition. Article 38.23 of the Code of Criminal Procedure only applies to exclude
evidence when there has been a violation of law or constitution. We decline appellant's invitation
to consider that a person has violated a law despite having a clearly applicable affirmative defense
to being prosecuted for the offense. Appellant's second point of error is overruled.

 


 Having disposed of appellant's three points of error, we affirm the judgment of
conviction. 



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 29, 1999

Do Not Publish
1. Rule 107 of Texas Rules of Evidence provides:


 When part of an act, declaration, conversation, writing or recorded
statement is given in evidence by one party, the whole on the same subject may be
inquired into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the same
may also be given in evidence, as when a letter is read, all letters on the same
subject between the same parties may be given. "Writing or recorded statement"
includes depositions. 

 



rary, while the appellate
court acknowledged that the argument was made in that case, the court's answer was that, even
if the defendant's argument about affirmative defenses were valid, it would not apply in that case
because the prior version of the statute applied. The court distinguished the previous version of
the wiretapping statute, which was applicable to that defendant, on the basis of there being
exceptions rather that affirmative defenses in the prior law. The court was careful to point out in
a footnote: 

 

 Our explanation of the differences between the new and old versions of
section 16.02 of the Penal Code is to aid in the understanding of Hernandez's
argument. We are not to be read as holding that a different result would occur
under the current version of the statute.

 


 Id. at 506 n.5.

 This case does not support appellant's argument, but points out the fault in it. The
court points out that the only real difference between an "exception" and an "affirmative defense"
is that the new label "merely alters the burden of proof." Id. at 506. 

 The provision that permits Belinda and the chief of police to show that they are
within the affirmative defense of making a recording with the consent of one of the parties, begins
by stating: "It is an affirmative defense to prosecution under Subsection (b) that . . . ." Section
2.01 of the Penal Code provides: 

 

 All persons are presumed to be innocent and no person may be convicted
of an offense unless each element of the offense is proved beyond a reasonable
doubt. The fact that he has been arrested, confined, or indicted for, or otherwise
charged with the offense gives rise to no inference of guilt at his trial.



Tex. Penal Code Ann. § 2.01 (West 1994).

 Since all persons are presumed innocent, and it is a defense to prosecution (and
ultimately to conviction) that a person comes within one of the specified affirmative defenses, we
cannot accept appellant's interpretation that a person has still committed an offense even if he
proves that he comes within a statutory affirmative defense. Appellant presents no authority for
this proposition. Article 38.23 of the Code of Criminal Procedure only applies to exclude
evidence when there has been a violation of law or constitution. We decline appellant's invitation
to consider that a person has violated a law despite having a clearly applicable affirmative defense
to being prosecute